IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 21, 2018 Session

## IN RE THE CONSERVATORSHIP OF MARY RUTH DAVIS HUDSON

**Appeal from the Chancery Court for Knox County**
**No. 189670-3     Michael W. Moyers, Chancellor**

_____

## No. E2017-00810-COA-R3-CV

_____

In this conservatorship action, three of the conservatee's five adult children filed a petition for conservatorship over the conservatee in May 2015 and subsequently filed an emergency petition for conservatorship in June 2015. Following a hearing, the conservatorship court granted the emergency petition, naming one of the petitioners as conservator over the conservatee's property and one of the petitioners as conservator over the conservatee's person. The conservatee's two non-petitioning children subsequently filed a motion in opposition to the conservatorship and requested that it be dissolved. The conservatee then filed an answer to the petition and motion to dismiss the conservatorship. Following various subsequent motions and a hearing conducted in September 2015, the conservatorship court entered an order in October 2015, *inter alia*, appointing East Tennessee Human Resources Agency ("ETHRA") as an emergency interim conservator over the conservatee's property but maintaining the originally named petitioner as conservator over the conservatee's person. The conservatorship court subsequently memorialized these appointments as permanent in an order entered in December 2015. Upon motions for attorney's fees filed by the petitioners' counsel in January 2016, the conservatorship court found that the attorney's fees requested were reasonable and granted them in an order entered in March 2016. On March 29, 2016, ETHRA filed the last of three successive inventory and property management plans. The conservatee died on May 2, 2016. Upon multiple motions requesting fees, the conservatorship court conducted a hearing and subsequently entered an order on June 21, 2016, *inter alia*, awarding reasonable fees and expenses to the attorney *ad litem*, the conservator of the person, and the petitioners' counsel and former counsel. ETHRA filed a motion to enter final accounting on August 25, 2016, and concomitantly filed a motion requesting $9,112.50 in fees for the services of its representative agent. In September 2016, the petitioners' counsel filed additional requests for attorney's fees, and in October 2016, ETHRA's counsel filed a motion for attorney's fees. On October 6, 2016, ETHRA filed a motion to close the conservatorship. The petitioners subsequently filed an objection to the final accounting, and the two non-petitioning children filed separate objections to the petitioners' supplemental motions for attorney's fees filed subsequent to

the conservatee's death. Following two hearings, the conservatorship court entered an order on March 28, 2017, granting ETHRA's motion to close the conservatorship and motions for its representative's fees and attorney's fees. The conservatorship court declined to consider the petitioners' pending supplemental motions for attorney's fees, referring those to the probate court in a subsequent order. The conservatorship court also referred any claims arising from the petitioners' objections to the final accounting to the probate court. The petitioners have appealed, asserting improper transfer to probate court of their pending motions requesting attorney's fees, a lack of itemization of the services provided by the ETHRA representative, and deficiencies in the final accounting. Having determined that the conservatorship court improperly transferred to the probate court the petitioners' motions for attorney's fees without making necessary findings of fact and improperly closed the conservatorship without making findings of fact concerning the petitioners' objections to the final accounting, we vacate those portions of the judgment. We affirm the undisputed grant of attorney's fees to ETHRA's counsel. We remand for entry of findings of fact and conclusions of law concerning the petitioners' objections to the final accounting and concerning whether the attorney's fees requested in the petitioners' counsel's pending attorney's fee motions were incurred in relation to the conservatorship and, if so, whether reasonable attorney's fees should be granted upon each of these motions. We also direct the conservatorship court to enter an order on remand directing ETHRA to present a detailed explanation of the basis for its representative's claim for fees and expenses for the conservatorship court's consideration based upon the factors provided in Tennessee Code Annotated § 34-1-112(a) (2015).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Marilyn L. Hudson, Knoxville, Tennessee, Pro Se and for co-appellants, Stephen D. Hudson and Lou Ann Hudson.

William A. Reeves, Knoxville, Tennessee, for the appellee, East Tennessee Human Resources Agency as Conservator for the Financial Affairs of Mary Ruth Davis Hudson.

**OPINION**

I. Factual and Procedural Background

On May 22, 2015, Marilyn L. Hudson ("Marilyn Hudson"), Lou Ann Hudson, and Stephen D. Hudson ("Stephen Hudson") (collectively, "Petitioners"), filed a verified

petition in the Knox County Chancery Court ("conservatorship court"), seeking establishment of a conservatorship on behalf of their mother, Mary Ruth Davis Hudson ("Conservatee"), who was then ninety-one years of age. Petitioners requested that Marilyn Hudson, an attorney licensed in Tennessee, be named as conservator over Conservatee's assets and property and that Lou Ann Hudson, a nurse registered in Tennessee, be named as conservator over Conservatee's person. Petitioners concomitantly filed an affidavit executed by William P. Powers, M.D., a physician who had examined Conservatee during a recent hospitalization for hemorrhagic colitis and opined that she was unable to care for herself or manage her finances at that time. The conservatorship court entered an order on May 27, 2015, appointing attorney Gerald Lee Gulley, Jr., as a guardian *ad litem* to represent the interests of Conservatee.

Conservatee previously had executed a power of attorney for health care naming Lou Ann Hudson in 2010 and a durable power of attorney over finances naming Marilyn Hudson in 2011. However, on November 12, 2014, Conservatee had executed durable and health care powers of attorney appointing her eldest child, Harry E. Hudson, Jr. ("Harry Hudson"), as her attorney-in-fact over all matters. At all times pertinent to this appeal, Harry Hudson resided in Stockton, California, and was an attorney practicing law in California.

On June 12, 2015, Petitioners filed a verified petition for appointment of emergency co-conservators, again seeking to have Marilyn Hudson appointed financial conservator and Lou Ann Hudson appointed personal conservator. In this second pleading, Petitioners alleged that Harry Hudson and Conservatee's youngest child, Carol Sue Hudson ("Carol Hudson"), who resided in Tennessee, had placed Conservatee in an inferior nursing home in Knoxville upon Conservatee's recent release from the hospital and that Conservatee was suffering from neglect and poor environmental conditions. Petitioners further alleged that Harry Hudson and Carol Hudson had acted to have Petitioners banned from visiting Conservatee and that Conservatee was in danger of substantial harm if the emergency conservatorship were not granted. Following an *ex parte* hearing, the conservatorship court entered an order on June 12, 2015, granting the petition insofar as the court appointed Lou Ann Hudson as emergency conservator over Conservatee's person and Marilyn Hudson as emergency conservator over Conservatee's finances. The court also set a hearing for June 15, 2015.

On June 15, 2015, Harry Hudson and Carol Hudson filed a motion in opposition to the order appointing emergency co-conservators, attaching several exhibits. The conservatorship court conducted a hearing on this day, with Chancellor Clarence E. Pridemore, Jr., presiding in Chancellor Michael W. Moyers's absence. On June 16, 2015, the conservatorship court entered an order confirming the appointment of Lou Ann Hudson as personal conservator but removing Marilyn Hudson as financial conservator

3

and appointing Harry Hudson as financial conservator in her stead. The court found, *inter alia*, that Conservatee's November 2014 execution of a power of attorney constituted a valid appointment of Harry Hudson as Conservatee's attorney-in-fact over financial matters. The court also entered a separate order on the same day, appointing attorney Christopher D. Heagerty as an attorney *ad litem* to protect the rights and interests of Conservatee pursuant to Tennessee Code Annotated § 34-1-125 (2015). The conservatorship court, with Chancellor Moyers again presiding, subsequently entered an agreed order on July 22, 2015, setting the matter for hearing on several contested issues, including whether Conservatee needed a conservator over her finances and person and if so, who the conservator or conservators should be.

Conservatee, acting through her attorney *ad litem*, filed an "Answer and Motion to Dismiss" on July 30, 2015, asserting that the conservatorship petition failed to state a claim upon which relief could be granted because she was mentally competent and not in need of a conservator over her person or finances. In the alternative, she requested that Harry Hudson be named as her financial conservator. Carol Hudson subsequently filed a motion to intervene as a petitioner, which was opposed by Petitioners in a response filed with the conservatorship court.

On September 1, 2015, the conservatorship court entered an order resolving several motions. The court, *inter alia*, denied Conservatee's motion to dismiss for failure to state a claim upon which relief could be granted. The court also awarded $6,781.00 in attorney's fees to the attorney *ad litem* and $9,070.70 in attorney's fees and expenses to Petitioners' then-counsel, James C. Cone. Following a separate hearing on Carol Hudson's motion to intervene, the conservatorship court denied the motion in an order entered September 8, 2015. Also on September 8, 2015, the court entered an order allowing Mr. Cone to withdraw from representation and approving substitution of counsel for Petitioners, who had retained attorneys Douglas J. Toppenberg and Marshall H. Peterson. The court entered an order amending its September 1, 2015 order but not disturbing the relevant provisions on November 2, 2015.

Following various subsequent motions and a hearing conducted on September 29, 2015, the conservatorship court entered an order on October 12, 2015, *inter alia*, appointing ETHRA as an emergency interim financial conservator and maintaining Lou Ann Hudson as an emergency interim personal conservator.[1] The court directed ETHRA to "take possession of all financial assets of [Conservatee]" and "ensure that no further funds are dissipated from the estate of [Conservatee] except to pay for her care and other necessities." On appeal, Petitioners assert that they had agreed to the appointment of a neutral financial conservator but had objected specifically to the appointment of ETHRA,

---

[1] The conservatorship court's October 12, 2015 order lists the date of this hearing as September 30, 2015, but a transcript excerpt included in the record is dated September 29, 2015.

4

arguing that ETHRA was "not organized to handle estates as large and diverse as [Conservatee's] estate." Upon a subsequent motion to intervene filed by Mountain Commerce Bank ("MCB"), the conservatorship court entered an agreed order on November 2, 2015, allowing MCB to intervene for the purpose of receiving a declaration of loss from ETHRA concerning a cashier's check in the amount of $159,677.00, that had been previously drawn on Conservatee's MCB account by Marilyn Hudson and had purportedly not been cashed. In the agreed order, the court directed ETHRA to deposit the proceeds from the declaration of loss into its Pooled Trust Account ("Pooled Trust") and also directed ETHRA to request that all of Conservatee's funds held by First Tennessee Bank, Regions Bank, and University of Tennessee Federal Credit Union be transferred immediately to the Pooled Trust.

Following a hearing conducted on December 15, 2015, the conservatorship court entered on the same day an "Agreed Final Order Appointing Conservator of the Person and Conservator of the Property of Mary Ruth Davis Hudson," naming Mary Lou Hudson as the personal conservator and ETHRA as the financial conservator through Carol Silvey Wilson as ETHRA's representative agent. The court discharged the guardian *ad litem* from further duties but maintained the appointment of the attorney *ad litem* pending resolution of issues concerning Conservatee's real property. In declaring the agreed order final, the conservatorship court stated the following in pertinent part:

> The Conservator of the Person, Counsel for the parties, and the Guardian ad litem shall submit their fee petitions to the Court for review prior to authorizing [ETHRA], by Carol S. Wilson, representative agent, to satisfy same from the estate of [Conservatee].

> This Order constitutes a final order of this Court, and as such the parties hereby waive any further hearing in this matter except for such necessary hearings related to fees, management plan, inventory, and any other matter that the financial conservator brings before the Court.

(Paragraph numbering omitted.)

On January 5, 2016, Mr. Toppenberg, as counsel for Petitioners and the personal conservator, and Mr. Peterson, as counsel for the personal conservator, each filed separate motions for attorney's fees, requesting total fees in the respective amounts of $30,604.30 and $18,921.48. Each then filed an amended motion for attorney's fees on February 5, 2016, requesting total fees in the respective amounts of $34,852.80 and $21,099.94. ETHRA filed responses objecting to the fee motions on February 5, 2016, and February 23, 2016. Through her attorney *ad litem*, Conservatee filed a motion on March 4, 2016, requesting to be heard on all issues. Following a subsequent hearing, the

5

conservatorship court found the requested attorney's fees to be reasonable and entered an order on March 14, 2016, granting that attorney's fees be paid from the conservatorship to Mr. Toppenberg in the amount of $34,888.80[2] and to Mr. Peterson in the amount of $21,099.94.

ETHRA filed three successive inventories and property management plans, beginning with an inventory and plan filed on December 8, 2015, and culminating with an inventory and plan filed on March 29, 2016, in which ETHRA indicated a total asset value of the conservatorship in the amount of $711,903.37. No objections were filed to the inventory and property management plans. Conservatee died on May 2, 2016. Upon Lou Ann Hudson's motion as the personal conservator, the conservatorship court granted her control of Conservatee's remains.

Upon various motions requesting fees, the conservatorship court conducted a hearing on June 6, 2016. The court subsequently entered an order on June 21, 2016, terminating the representation of the attorney *ad litem* and ordering the following:

1. The Attorney Ad Litem, Christopher D. Heagerty, . . . is awarded his reasonable fees and expenses in the amount of $7,161.50.

2. The Conservator of the Person, Co-Petitioner Lou Ann Hudson, . . . is awarded her reasonable fees and expenses in the amount of $50,056.60 for her service as Conservator of the Person of [Conservatee].

3. Douglas J. Toppenberg, The Toppenberg Law Firm, P.C. . . . is awarded his reasonable fees and expenses in the amount of $26,606.45.

4. Marshall H. Peterson, Holbrook Peterson Smith PLLC, . . . is awarded his reasonable fees and expenses in the amount of $22,082.50.

5. The Court finds the fee requests made on behalf of Petitioner[s'] former counsel, J. Christopher Cone are reasonable, and that Co-Petitioner Marilyn L. Hudson . . . shall be reimbursed in the amount of $1,351.50 and Co-Petitioner Stephen D. Hudson . . . shall be

---

[2] Although in his amended motion for attorney's fees, Mr. Toppenberg requested the total amount of $34,882.80, his corresponding affidavit listed a total request in the amount of $34,888.80, which is the amount the trial court awarded to Mr. Toppenberg in its March 14, 2016 order.

reimbursed in the amount of $10,000.00, for the fees previously paid by them to Mr. Cone.

The total amount of fees granted as payment from the conservatorship via the June 21, 2016 order was $117,258.55. On June 22, 2016, attorney Carolyn Levy Gilliam filed a notice of appearance on behalf of Conservatee's estate ("the Estate"). Upon Mr. Toppenberg's subsequent motion, the conservatorship court entered an order on August 4, 2016, allowing him to withdraw from representation of Petitioners.

On August 25, 2016, ETHRA filed a "Final Report and Accounting," setting forth receipts to the conservatorship in the total amount of $440,271.74; total disbursements in the amount of $398,754.84; and remaining assets in the amount of $41,516.90. ETHRA concomitantly filed a "Motion for Reimbursement," requesting court costs and reimbursement to ETHRA's Public Guardianship for the Elderly program in the total amount of $9,112.50 for services rendered by Ms. Wilson as representative agent. At issue on appeal are alleged deficiencies in the final accounting, lack of itemization of the services provided by Ms. Wilson, and additional motions requesting attorney's fees filed by Petitioners in September 2016.

Specifically, Mr. Peterson, as counsel for Petitioners and the personal conservator, filed an "Amended Claim for Attorney's Fees," requesting additional attorney's fees and expenses in the total amount of $4,073.50 for services rendered from June 6, 2016, through August 30, 2016. In addition, Mr. Peterson filed a separate "Amended Claim for Attorney's Fees," requesting a supplemental total of $8,938.50 for attorney's fees and expenses for services rendered by co-counsel, Mr. Toppenberg, from February 2, 2016, through September 6, 2016. Attorney William A. Reeves also filed a motion in October 2016, seeking approval of attorney's fees for his services as counsel representing ETHRA in the amount of $10,049.04, an amount that is not in dispute on appeal.

On October 6, 2016, ETHRA filed a motion to close the conservatorship. On October 25, 2016, Carol Hudson, acting through her own individual counsel, attorney Keith H. Burroughs, filed an objection to the amended claims for attorney's fees filed by Petitioners' counsel, Mr. Peterson and Mr. Toppenberg.[3] Carol Hudson averred that any fees awarded for services rendered by Petitioners' counsel over a month after Conservatee's death would be excessive. In response, Petitioners filed a motion to strike Carol Hudson's objection and the notice of appearance of her counsel on the basis that Carol Hudson's motion to intervene had been denied. Harry Hudson, acting through his own counsel, Ms. Gilliam, subsequently filed an objection to Petitioners' amended claims

---

[3] As noted previously, Mr. Peterson also represented Lou Ann Hudson, who was a co-petitioner, in her role as personal conservator. For ease of reference, we will hereinafter refer to Mr. Peterson and Mr. Toppenberg as "Petitioners' counsel" in relation to their outstanding claims for attorney's fees.

7

for attorney's fees on November 4, 2016, arguing in agreement with Carol Hudson's objection.

On October 31, 2016, Petitioners filed objections to ETHRA's motion for reimbursement and final report and accounting, requesting additional documentation in support of each. As to alleged deficiencies in the final accounting, Petitioners focus on appeal on checks drawn on a First Tennessee Bank account by Harry Hudson as attorney-in-fact, allegedly for his own benefit and totaling at least $15,757.70; further alleged dissipation of a second First Tennessee Bank account ultimately transferred to the Pooled Trust in the amount of $57,866.04; purportedly insufficient documentation of a $4,022.00 balance in a Regions Bank account; and a 1991 Cadillac Seville, purportedly valued at $2,500.00.

Upon Petitioners' subsequent motion, the conservatorship court entered on order on December 16, 2016, allowing Mr. Peterson to withdraw as Petitioners' counsel, to be replaced by Marilyn Hudson as *pro se* counsel on her own behalf and as counsel for her co-petitioners. Mr. Peterson then filed another amended claim for attorney's fees on January 20, 2017, requesting an additional $4,749.50 in attorney's fees and expenses for services rendered through December 7, 2016, for a total outstanding request of $8,823.00. On March 23, 2017, Mr. Toppenberg filed a second supplemental claim for his attorney's fees, requesting an additional $3,640.00 in attorney's fees and expenses for services rendered through March 22, 2017, for a total outstanding request of $12,578.50.

The conservatorship court conducted two hearings on non-consecutive days: January 23, 2017, and March 28, 2017. During the January 23, 2017 hearing, the parties acknowledged that a probate action had been opened on behalf of the Estate in the Knox County Probate Court ("probate court") and that a neutral personal representative of the Estate had been agreed upon and appointed. This personal representative, attorney Steven K. Bowling, appeared during the March 28, 2017 hearing in the conservatorship court.

In an order entered March 28, 2017, the conservatorship court found that ETHRA had filed the final report and accounting and that ETHRA's motion to close the financial conservatorship should be granted. The court thereby closed the conservatorship estate, discharged ETHRA as the financial conservator, and awarded certain fees and expenses. Specifically, the court directed ETHRA to pay from the conservatorship (1) $9,112.50 for Ms. Wilson's fees as reimbursement to ETHRA's Public Guardianship Program; (2) $12,788.20 in attorney's fees and $262.00 in expenses to Mr. Reeves's law firm as counsel for ETHRA; and (3) court costs for the conservatorship. The court further ordered that the balance of funds held by ETHRA would be paid to the personal representative of the Estate.

Concerning Petitioners' pending motions for attorney's fees, the conservatorship court found during the March 28, 2017 hearing that the remaining fee petitions should be "handled as claims against the estate in probate court." The court did not initially include this direction in the written order. On April 7, 2017, Petitioners filed an "objection" to the March 28, 2017 order, asserting, *inter alia,* that the conservatorship court did not include its "referrals" of matters to the probate court in its written order. Petitioners attached a proposed amended order with said referrals included. The conservatorship court did not enter the proposed amended order at that time.

Petitioners then filed a notice of appeal from the March 28, 2017 order on April 24, 2017. ETHRA subsequently filed a motion to dismiss the appeal with this Court, asserting that this Court lacked subject matter jurisdiction because the March 28, 2017 order was not final. On September 21, 2017, this Court entered an order denying the motion to dismiss while also remanding to the conservatorship court for entry of a final order. Noting that pursuant to Tennessee Rule of Appellate Procedure 4(d), "[a] prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof," this Court determined that the notice of appeal should be treated as filed on the date the conservatorship court entered a written order memorializing all of the rulings at the close of trial on March 28, 2017, including any referrals to the probate court.

Following a hearing on remand, the conservatorship court entered the proposed amended order previously filed by Petitioners as the final judgment in the conservatorship on October 19, 2017. The conservatorship court memorialized its previous referrals to the probate court, directing specifically in relevant part:

> The motions and amended motions for attorney fees and expenses filed by Marshall H. Peterson and filed by Douglas J. Toppenb[e]rg, as attorneys for Petitioners, are referred to the jurisdiction of the Probate Court of Knox County, under the Probate Estate of Mary Ruth Davis Hudson, for review and disposition by that court.
>
> The issues concerning the losses in value to [Conservatee's] assets, as set forth in Petitioners' Objections to Final Report and Accounting, which losses include the diminution in value to [Conservatee's] vehicle due to damage while under the care of [ETHRA], the unlawful removal of funds from [Conservatee's] financial accounts by an unauthorized third party, and the loss of long term health care benefits due to [ETHRA's] failure to make timely application for said benefits, are referred to the jurisdiction of the

9

Probate Court of Knox County, under the Probate Estate of Mary Ruth Davis Hudson, for proper action to recover said losses.

(Paragraph numbering omitted.) This appeal followed.

## II. Issues Presented

Petitioners present three issues on appeal, which we have restated as follows:[4]

1. Whether the conservatorship court erred by declining to consider supplemental motions for attorney's fees filed by Petitioners' former counsel and referring such motions to the probate court.

2. Whether the conservatorship court erred by granting an award of fees and expenses to ETHRA for Ms. Wilson's services without requiring that the corresponding application for fees and expenses be itemized.

3. Whether the conservatorship court erred by closing the conservatorship and approving ETHRA's final accounting over Petitioners' objections while referring to the probate court alleged accounting deficiencies and losses involving Conservatee's bank and investment accounts, allegedly misappropriated funds, and vehicle.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).

As to our review of the conservatorship court's award of attorney's fees, "'[t]he allowance of attorney's fees is largely in the discretion of the trial court, and the appellate

---

[4] Although Petitioners also initially argued in their principal brief on appeal that the conservatorship court had erred by failing to memorialize its referrals to the probate court of Petitioners' supplemental motions for attorney's fees and accounting objections, Petitioners acknowledged in their reply brief that the conservatorship court had subsequently memorialized these referrals in its October 2017 amended order entered on non-dispositional remand from this Court.

court will not interfere except upon a clear showing of abuse of that discretion.'" *In re Conservatorship of Lindsey,* No. W2011-00196-COA-R3-CV, 2011 WL 4120664, at *4 (Tenn. Ct. App. Sept. 16, 2011) (quoting *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005)). "[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Mar. 12, 2007) (internal citations omitted).

### IV.  Referral to Probate Court of Petitioners' Attorney's Fee Motions

Petitioners contend that the conservatorship court erred by declining to hear their remaining motions for attorney's fees and referring said motions to the probate court. Specifically at issue are Petitioners' former counsel's supplemental claims for attorney's fees, which were filed subsequent to the conservatorship court's June 21, 2016 order awarding reasonable attorney's fees and expenses in the amounts of, respectively, $22,082.50 to Mr. Peterson and $26,606.45 to Mr. Toppenberg.  The supplemental claims include Mr. Peterson's amended claims for attorney's fees and expenses in the total amount of $8,823.00 for services rendered from June 6, 2016, through December 7, 2016, and Mr. Toppenberg's amended claims for attorney's fees and expenses in the total amount of $12,578.50 for services rendered from February 2, 2016, through March 22, 2017.

During the March 28, 2017 hearing, the conservatorship court declined to consider Petitioners' pending motions for attorney's fees except to direct that they "be handled as claims against the estate in probate court."  On remand from this Court's non-dispositional order, the conservatorship court in its amended order expressly referred the supplemental motions for attorney's fees filed by Mr. Peterson and Mr. Toppenberg to the probate court "for review and disposition by that court."  On appeal, ETHRA asserts that referral to the probate court was within the conservatorship court's broad discretion in deciding whether to award attorney's fees.  Upon careful review, we conclude that the conservatorship court, as the court familiar with the conservatorship proceedings, was the appropriate forum for a determination of whether the remaining attorney's fees requested by Petitioners were related to the conservatorship and thereby awardable as money judgments within the conservatorship proceedings.  The conservatorship court could then properly refer Petitioners and their former counsel to the probate court for recovery of said money judgments from the Estate.

In considering claims for attorney's fees, Tennessee courts adhere to the "American Rule."  *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d

303, 308 (Tenn. 2009) (explaining that "[u]nder the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case."). In this action, it is undisputed that the conservatorship court had the authority, in its discretion, to grant attorney's fees to Petitioners based on Tennessee Code Annotated § 34-1-114 (2015), which provides:

(a)     The costs of the proceedings, which are the court costs, the guardian ad litem fee and expenses incurred by the guardian ad litem in conducting the required investigations, the required medical examination costs, and the attorney's fee for the petitioner, may, in the court's discretion, be charged against the property of the respondent to the extent the respondent's property exceeds the supplemental security income eligibility limit, or to the petitioner or any other party, or partially to any one or more of them as determined in the court's discretion. In exercising its discretion to charge some or all of the costs against the respondent's property, the fact a conservator is appointed or would have been appointed but for an event beyond the petitioner's control is to be given special consideration. The guardian ad litem fee and the attorney's fee for the petitioner shall be established by the court. If a fiduciary is cited for failure to file an inventory or accounting, the costs incurred in citing the fiduciary, in the discretion of the court, may be charged to and collected from the cited fiduciary.

(b)     If the principal purpose for bringing the petition is to benefit the petitioner and there would otherwise be little, if any, need for the appointment of a fiduciary, the costs of the proceedings may be assessed against the petitioner, in the discretion of the court.[5]

We note at the outset that "[s]ubject matter jurisdiction relates to a court's authority to adjudicate a particular type of case or controversy brought before it." *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012). Pursuant to Tennessee Code Annotated § 16-16-201(a) (Supp. 2017), the chancery court in Knox County has

---

[5] In addition, Tennessee Code Annotated § 34-1-113(c) (2015), concerning payments made by a fiduciary, authorizes the fiduciary of a conservatorship to pay from the property of the conservatee "other expenses" not contemplated elsewhere in the statutory subsection with the approval of the trial court "upon a determination that they are reasonable and: (1) They protected or benefited the minor or person with a disability or such person's property; or (2) That their payment is in the best interest of the minor or person with a disability."

"exclusive jurisdiction over the probate of wills and the administration of estates of every nature, including the estates of decedents and of wards under guardianships or conservatorships and all matters related thereto . . . ." *See generally In re Estate of Trigg*, 368 S.W.3d at 494. According to Rule 17 of the Local Rules of Practice for Knox County Chancery Court, conservatorship matters in Knox County are heard by the chancery court while matters related to the probate of will and administration of estates are heard by the probate division of the chancery court.

By statute, "[w]hen the person with a disability dies . . . the conservatorship shall terminate." Tenn. Code Ann. § 34-3-108(e) (Supp. 2017); *see In re Blessing*, No. 01A01-9712-CH-00691, 1998 WL 862480, at *12 (Tenn. Ct. App. Dec. 14, 1998). Although the conservatorship terminates with the conservatee's death, Tennessee Code Annotated § 34-3-108(e) does provide for a 120-day winding-up period during which the conservator must file a final statement. The conservatorship court retains subject matter jurisdiction over the conservatorship pending the court's approval of the final statement. *See In re Blessing*, 1998 WL 862480, at *12 ("The conservator must, however, make a final settlement within 120 days and the conservatorship court retains jurisdiction for this winding up of the conservatorship.").

In this case, we must consider whether Petitioners' supplemental attorney's fees requested were incurred within the conservatorship proceeding as anticipated by Tennessee Code Annotated § 34-1-114. It is undisputed that other than a few invoice items submitted by Mr. Toppenberg that were purportedly accrued between February and May of 2016, the majority of the invoiced fees and expenses at issue were for services rendered after Conservatee's death on May 2, 2016. Petitioners acknowledged during the March 2017 hearing that the amount of funds remaining in the conservatorship according to ETHRA's final accounting at that time, $41,516.90, was likely not enough to fund all fee requests. Petitioners maintain, however, that the conservatorship court should have reduced all fee requests to money judgments and referred them equally to the probate court as claims against the Estate.

In support of their argument that the instant fee claims should have been addressed by the conservatorship court, Petitioners rely on this Court's decision in *In re Blessing*, a conservatorship case in which the conservatorship court was faced with multiple claims for attorney's fees after the conservatee had died and a final accounting that indicated insufficient conservatorship funds to pay the multiple claims. *See* 1998 WL 862480, at *5-7. The *Blessing* conservatorship court sustained all of the fee claims, reduced them to money judgments, and advised all parties that their remedies for collecting the fee judgments would be in probate court. *Id.* at *12. This Court affirmed the conservatorship court's judgment in *Blessing*, noting the conservatorship court's broad

13

discretion in winding up a conservatorship within the statutory period following the conservatee's death. *See id.* at \*12. The *Blessing* Court concluded in relevant part:

> Under Tennessee's 1992 statutory revision of previous guardianship and conservatorship statutes as is evidenced in Tennessee Code Annotated Title 34, chp. 11-13, the conservatorship terminates upon death of the conservatee. Tenn. Code Ann. § 34-13-108(e) (1996). The conservator must, however, make a final settlement within 120 days and the conservatorship court retains jurisdiction for this winding up of the conservatorship. It is obvious from the May 6, 1997 findings of the chancellor, his judgment of June 19, 1997 awarding fees to all parties, and his order of September 3, 1997 overruling all objections thereto, that he believed himself lacking in authority to effect a post-death sale of the home of [the conservatee] or do anything else other than to, in effect, amend the final settlement of the co-conservators by awarding fees for the conservatorship case. He specifically advised all parties and all attorneys that their remedy for collecting any judgments that he ordered in the conservatorship proceeding was to file proper claims therefor in the probate court.
>
> In view of the broad discretion given the chancellor by the conservatorship statutes, we cannot say that his method of winding up the conservatorship proceedings exceeded subject matter jurisdiction. The correctness or incorrectness of the actions of the Probate Court of Wilson County as reflected by the Rule 14 post-judgment facts recognized in this court, must await an appeal from the judgment of the probate court and is not a proper subject of present appellate adjudication. The judgment of the chancellor is in all respects affirmed and costs are assessed against the appellants.

*Id.*

In the present case, the March 28, 2017 hearing transcript reflects that the hearing was set on a "motion day" in the conservatorship court and had not been initially set for an evidentiary hearing. The hearing was set to address ETHRA's motion to close the conservatorship and the outstanding fee petitions. During the hearing, ETHRA's counsel actually requested that the conservatorship court address the fee petitions on the merits, stating: "In order to close the conservatorship fully and finally, the conservator needs direction from the Court as to what to pay and what to do with the balance, if there is any." Mr. Bowling, appearing as personal representative of the Estate, requested that the conservatorship court settle the amounts of the fee petitions before closing the

conservatorship. Because both Harry Hudson and Carol Hudson, represented by attorney Keith Burroughs during the hearing, had filed objections to Petitioners' counsel's amended claims for attorney's fees, all parties acknowledged that an evidentiary hearing would be necessary in order for the conservatorship court to address the objections and determine what portion, if any, of the remaining attorney's fee claims were for services that were reasonable and necessary to the conservatorship proceedings.[6] Nevertheless, at the close of the hearing, the conservatorship court stated that upon its entry of an order closing the conservatorship and awarding ETHRA's requests for attorney's fees, "[t]hese other fees can be handled as claims against the estate."

The conservatorship court did not address its referral of Petitioners' outstanding claims for attorney's fees in its March 28, 2017 order closing the conservatorship. In its amended order, entered on remand from this Court, the conservatorship court memorialized the referral to probate court, finding in relevant part:

> [T]he Court finding that the Motions by [ETHRA] are proper and should be approved to the extent set forth herein, and that [ETHRA] has filed its Final Report and Accounting, and the Court further finding that the fee petitions of Marshall H. Peterson and Douglas J. Toppenb[e]rg should be treated differently from those of [ETHRA] and its attorney William A. Reeves, and thus referred to the jurisdiction of the Knox County Probate Court to determine the fairness and reasonability of said fee applications and payment thereon . . . .
>
> * * *
>
> The motions and amended motions for attorney fees and expenses filed by Marshall H. Peterson and filed by Douglas J. Toppenb[e]rg, as attorneys for Petitioners, are referred to the jurisdiction of the Probate Court of Knox County, under the Probate Estate of Mary Ruth Davis Hudson, for review and disposition by that court.

---

[6] During the January 2017 hearing, Petitioners, as they had in their previously filed motion to strike, continued to question Carol Hudson's standing to raise objections to the attorney's fee requests and be represented by Mr. Burroughs during the hearing. Mr. Burroughs asserted that Carol Hudson had standing at that point in regard to the fee petitions as an heir to Conservatee. The conservatorship court stated during the January 2017 hearing that it would hold the issue of Carol Hudson's standing in abeyance. Mr. Burroughs again appeared during the March 2017 hearing on behalf of Carol Hudson and raised her objections to Petitioners' counsel's fee requests. The conservatorship court did not make an express ruling as to Carol Hudson's standing but did allow Mr. Burroughs to argue. Inasmuch as Petitioners have not raised the issue on appeal of Carol Hudson's standing to object to the fee petitions, we determine this issue to be waived. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

15

Petitioners particularly take issue with the conservatorship court's decision to grant ETHRA's petition for fees for Ms. Wilson's services, for which Petitioners had requested a more detailed accounting, while referring Petitioners' supplemental requests for attorney's fees to the probate court because the decision would result in ETHRA's fees being paid from the conservatorship while Petitioners' counsel's fees would be subject to the priority of claims in the probate court. *See* Tenn. Code Ann. § 30-2-317 (2015) (setting forth the priority of claims against an estate). For its part on appeal, ETHRA relies on the conservatorship court's wide discretion in awarding attorney's fees to petitioners in conservatorship cases. *See* Tenn. Code Ann. § 34-1-114. Although we agree that the conservatorship court has wide discretion in determining whether to award attorney's fees, we conclude that in exercising its discretion, the conservatorship court must properly consider evidence concerning the reasonableness of the fee requests and whether the fees were incurred in relation to the conservatorship and in benefit of the conservatee or the conservatee's property. *See id.*; *Conservatorship of Acree v. Acree*, No. M2011-02699-COA-R3-CV, 2012 WL 5873578, at *6 (Tenn. Ct. App. Nov. 20, 2012), *perm. app. denied* (Tenn. Mar. 20, 2013) ("When approving expenses to be paid from the ward's property, the Court is required to determine whether the expenses are reasonable and whether they protected/benefitted the ward or his property, or if payment is in the ward's best interests."); *Shipe v. Shipe*, No. E2003-01647-COA-R3-CV, 2004 WL 1669909, at *3 (Tenn. Ct. App. July 27, 2004) (explaining that the conservatorship court "was required to make a determination looking at the reasonableness of the fees requested, the benefit to the ward, and the intent of the petitioner").

We note that in general, a court with knowledge of the subject proceedings and the extent of services required by the attorneys involved is in a position to determine the purpose and reasonableness of the attorney's fees requested. *See, e.g., Beacon4, LLC v. I & L Invs., LLC*, 514 S.W.3d 153, 206 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Dec. 15, 2016) ("[U]pon our thorough review of the voluminous record of the five-day trial and surrounding proceedings, we determine that the chancellor possessed sufficient knowledge of the case to acquaint him with the factors relevant to determination of a reasonable award of attorney's fees."); *Madden Phillips Constr., Inc. v. CGAT Dev. Corp.*, 315 S.W.3d 800, 831 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. Mar. 15, 2010) ("There is no indication that the trial judge's involvement throughout the parties' legal proceedings, including four days of trial, did not sufficiently acquaint him with the factors relevant to the determination of a reasonable award."). In this case, the court with such knowledge of the conservatorship proceedings was the conservatorship court.

Inasmuch as the conservatorship court in this action made no findings regarding whether the attorney's fees requested in Petitioners' amended claims were reasonable or were incurred in relation to the conservatorship or in benefit of Conservatee or her

property, we vacate the portion of the conservatorship court's amended order referring Petitioners' attorney's fee claims to the probate court and remand for an evidentiary hearing on these claims. If the conservatorship court finds that Petitioners' requested fees or a portion of those fees are warranted within the conservatorship proceedings, the conservatorship court should enter a corresponding money judgment or judgments, which may be pursued further by Petitioners or their counsel in probate court if sufficient funds are no longer available from the conservatorship. *See, e.g., In re Blessing*, 1998 WL 862480, at *12.

## V. ETHRA Representative's Claim for Fees and Expenses

Petitioners also contend that the conservatorship court erred by granting an award of fees and expenses to ETHRA in the amount of $9,112.50 for the services of Ms. Wilson without requiring that ETHRA satisfy Petitioners' filed objection requesting additional information regarding the services rendered. Petitioners maintain that the fees for Ms. Wilson's services are "attorney fees," describing Ms. Wilson as ETHRA's "employee attorney," as distinguishable from ETHRA's counsel in this matter, Mr. Reeves.[7] ETHRA, however, states that it does not have an "employee/attorney" and describes Ms. Wilson as "the representative agent of ETHRA's public guardian/conservator program." In any case, Petitioners did include in their objections to the final report and accounting a request for "information to evaluate" the $9,112.50 amount requested. ETHRA contends that it was not required to provide additional information regarding these fees and expenses and that the conservatorship court properly exercised its discretion to determine that the fee request was reasonable in light of the complex nature of the case. Upon careful review, we determine that upon Petitioners' objection, the conservatorship court should have required ETHRA to provide more specific information concerning how it arrived at the figure requested.

It is well settled that a "conservator occupies a fiduciary position of trust of the highest and most sacred character." *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 642 (Tenn. Ct. App. 2006) (citing *Grahl v. Davis*, 971 S.W.2d 373, 377 (Tenn. 1998)). When setting the amount of compensation for services rendered by the fiduciary in a conservatorship, the conservatorship court is required to consider statutory factors as follows:

---

[7] Petitioners have not raised an issue on appeal concerning the conservatorship court's award in its amended final judgment of attorney's fees to ETHRA's counsel, Mr. Reeves, in the amount of $10,049.04. We note that Mr. Reeves's "Motion to Approve Attorney's Fees" was accompanied by an itemized account of services rendered. Any issue as to Mr. Reeves's fees has been waived on appeal. *See* Tenn. R. App. P. 13(b).

The fiduciary may receive reasonable compensation for services rendered. The court shall set the actual compensation to be paid, taking into account:

(1)     The complexity of the property of the minor or person with a disability;

(2)     The amount of time the fiduciary spent in performing fiduciary duties;

(3)     Whether the fiduciary had to take time away from the fiduciary's normal occupation;

(4)     Whether the services provided the minor or person with a disability are those the fiduciary should normally have provided had there been no need for a fiduciary, and

(5)     Such other matters as the court deems appropriate.

Tenn. Code Ann. § 34-1-112(a). "When a party having an interest in a disabled person's estate challenges a conservator's final accounting, the burden is on the conservator to establish the correctness of the accounting." *In re Conservatorship of White*, No. 01A01-9704-PB-00154, 1997 WL 629958, at *5 (Tenn. Ct. App. Oct. 14, 1997).

In the instant action, ETHRA, acting through Ms. Wilson, averred in its motion for reimbursement that because Conservatee was not indigent and could "bear some of the expenses for the services rendered by the District Conservator in the exercise of its fiduciary duty," the conservatorship court could award reasonable fees and expenses. ETHRA prayed for relief as follows:

WHEREFORE, the Office of Public Guardian, through its representative agent, Carol Silvey Wilson, prays that this Court:

1.     Permit the Public Guardianship for the Elderly program a reasonable reimbursement for services and expenses, and respectfully requests the sum of Nine Thousand One Hundred Twelve Dollars and 50/100 ($9,112.50) to be considered.

2.     Further, movant prays that she be permitted to reimburse the Public Conservatorship for the Elderly program from the account of [Conservatee], after payment of Court costs for this action.

18

The Final Report and Accounting, filed by ETHRA on the same day, did include a detailed log of receipts to and disbursements from the conservatorship, along with various documentation of these receipts and disbursements. However, apart from this accounting, ETHRA submitted no further itemized documentation of the specific services rendered to arrive at the requested fee amount of $9,112.50.

In support of their argument, Petitioners rely in part on an exchange that occurred during the March 28, 2017 hearing when Petitioners raised their objection to ETHRA's motion for fees and request for detailed information regarding the services rendered. The transcript reflects the following in pertinent part:

| | |
|---|---|
| Marilyn Hudson: | I'm talking about ETHRA's claim for fees. I'm not talking about reimbursement money. I'm talking about there is a separate motion here for reimbursement – I think that's how he captions it, motion for – |
| Mr. Reeves: | Those are the conservator's fees. It's been filed. |
| Marilyn Hudson: | They're for – |
| Mr. Reeves: | There's no requirement that there be any detail. It is routine. And in this case, frankly, that is a conservative accounting of the time that was involved in dealing with this family.<br><br>And there's – you know, I've never – I've never had anyone object. That's a – considering the fees that have been generated by the acrimony in this family, for the conservator to charge a $9,000 fee is – |
| The Court: | Well, it's a pretty precise number, though, nine one one – |
| Mr. Reeves: | Right. |
| The Court: | – two point five – |
| Mr. Reeves: | They keep – there are records, but – |

| | |
|---|---|
| The Court: | Well, if it's being objected to, then can you produce records that – |
| Mr. Reeves: | I suppose we can. I've never had to do that. |
| The Court: | Well, you know, this is a – |
| Mr. Reeves: | I know. |
| The Court: | This is a case of all sorts of firsts, isn't it? |

Despite the conservatorship court's oral recognition that upon Petitioners' objection, ETHRA could "produce records" to specifically support its fee claim, the court did not subsequently order ETHRA to produce an itemized accounting of the applicable services rendered. Instead, at the close of the hearing, the conservatorship court orally found the amount requested to be "reasonable" and approved an award to ETHRA's Public Guardianship Program in the amount of $9,112.50. In its March 28, 2017 written order and subsequent amended order, the conservatorship court found that ETHRA's motions were "proper" and "should be approved" but did not make further specific findings concerning ETHRA's requested fees for its agent's services.

Petitioners also rely on this Court's decision in *In re Conservatorship of Melton*, No. E2014-01384-COA-R3-CV, 2015 WL 4594126 (Tenn. Ct. App. July 31, 2015), *perm. app. denied* (Tenn. Mar. 23, 2016). In *Melton*, the conservator, which was, as here, ETHRA acting through Ms. Wilson as representative agent, successfully defended an appeal of an award of attorney's fees by arguing that such an award was "appropriate when she was successful in defending the final accounting." *See id.* at *7. As this Court explained:

> The record reflects that a portion of Conservator's requested attorney fees were not incurred on behalf of the Ward. Conservator requested attorney fees for services rendered from September 2013 until May 2014, a period in which the Ward was no longer living. Conservator argues that an award of attorney fees at trial and on appeal is appropriate when she was successful in defending the final accounting. Conservator analogizes the current case to the situation presented in *Pitts v. Blackwell*, No. M2000-01733-COA-R3[-CV], 2001 WL 1660829, at *6 (Tenn. Ct. App. Dec. 28, 2001), where this court held that the conservator was *not* entitled to an award of attorney fees because the conservator was unsuccessful in defending the final accounting. 2001 WL 1660829, at *6. In so holding,

20

the court relied upon the reasoning [in] *In re Estate of Wallace*, 829 S.W.2d 696, 704 (Tenn. Ct. App. 1992), where the court held that an executor of an estate may charge its necessary and reasonable legal fees against the estate only when the executor is successful in defending its conduct. *Pitts*, 2001 WL 1660829, at *6.

> Tennessee Code Annotated section 34-1-113(a) provides that a fiduciary may recoup legal fees incurred on behalf of the ward and "such other expenses as the court determines are necessary for the fiduciary." Exercising its discretion, the trial court only approved the amount of attorney fees that it determined was "reasonable and necessary" and expended on behalf of the Ward. We uphold the trial court's discretionary decision.

*Id.* at *7.

Petitioners argue that *In re Conservatorship of Melton* demonstrates that a fiduciary, specifically ETHRA in *Melton* and in the instant action, *see id.*, can be expected to specifically document and defend its final accounting, including any request for fees. For its part, ETHRA relies on the discretion afforded the conservatorship court in awarding fees to the fiduciary based on the statutory considerations delineated in Tennessee Code Annotated § 34-1-112(a) and notes that the statute does not require an itemized listing of services rendered. We agree with ETHRA insofar as we see no reason for the conservatorship court to require itemization of services if no party with an interest in the estate has objected to the final accounting and request for the fiduciary's fees and if the court, upon consideration of the statutory factors provided in § 34-1-112(a), finds the fees to be reasonable.

However, in this case, Petitioners did object to the final accounting and specifically requested that the court "require ETHRA to set forth the basis for its claim for reimbursement of $9,112.50." Moreover, the conservatorship court entered no specific findings in its amended final judgment regarding the statutory factors provided in Tennessee Code Annotated § 34-1-112(a) other than a finding that the motion was "proper." We therefore vacate the conservatorship court's award to the Public Guardianship Program of ETHRA in the amount of $9,112.50 and remand for entry of an order directing ETHRA to present a detailed explanation of the basis for its representative's claim for fees and expenses. The conservatorship court shall then make a determination regarding the reasonableness of those fees and expenses based on the court's application of the statutory factors.

21

## VI.  Petitioners' Objections to Final Report and Accounting

Petitioners further contend that the conservatorship court erred by approving ETHRA's final report and accounting and closing the conservatorship over Petitioners' objections, with a referral to the probate court for the personal representative to pursue any claims arising from Petitioners' allegations of accounting deficiencies and losses.  On appeal, Petitioners specifically raise their objections regarding Conservatee's bank and investment accounts, allegedly misappropriated funds, and vehicle.[8]  In response, ETHRA asserts that Petitioners failed to present evidence in support of their objections and that the conservatorship court properly referred claims involving Conservatee's assets to be pursued, if viable, by the Estate's personal representative in probate court.

Upon a thorough review of the record, we determine that the conservatorship court did hear arguments concerning Petitioners' objections during the January 2017 and March 2017 non-evidentiary hearings, even directing ETHRA at the close of the January 2017 hearing to provide further documentation of the First Tennessee Bank accounts, which ETHRA did by the time of the March 2017 hearing.  However, although the conservatorship court closed the conservatorship over Petitioners' objections, the court did not specifically address the objections in either its March 2017 order or subsequent amended order except to refer them to the probate court.  Therefore, we are unable to discern with any certainty the basis upon which the conservatorship court found the specific objections to be unavailing and thereby found ETHRA's motion to enter the final accounting to be "proper."  *See In re Conservatorship of White*, 1997 WL 629958, at *5 (noting the conservator's burden to "establish the correctness" of a final accounting when it is challenged by "a party having an interest in a disabled person's estate").

Petitioners' objections concerning Conservatee's bank accounts and investments and allegedly misappropriated funds primarily involve three bank accounts.  First, as to a First Tennessee Bank account ending in 8071 ("Account 8071"), Petitioners aver that ETHRA failed to sufficiently investigate their allegations that by utilizing his November 2014 appointment as Conservatee's attorney-in-fact to convert Account 8071 into a joint account with his right of survivorship, Harry Hudson obtained at least $15,757.70 from Account 8071 for his own use.  As Petitioners note, Mr. Bowling appeared during the March 2017 hearing and stated that Harry Hudson had closed Account 8071, tendering to Mr. Bowling (as personal representative of the Estate) a balance of approximately

---

[8] In the "Issues Presented" section of its responsive brief on appeal, ETHRA notes that Petitioners had also raised as an objection to the final accounting ETHRA's alleged failure to apply for Conservatee's long-term health care insurance benefits.  However, Petitioners did not list this objection in their issues presented on appeal, and they have acknowledged in their reply brief that the objection is now moot because Mr. Bowling completed the necessary application during the pendency of this appeal, resulting in a payment to the Estate.

$2,600.00. Petitioners insist that in the final accounting, ETHRA failed to account for the dissipation of funds in Account 8071 and also inaccurately listed the final balance as $4,931.75.

Second, as to a First Tennessee Bank account ending in 5779 ("Account 5779"), purportedly created under the authority of Harry Hudson's November 2014 power of attorney, Petitioners acknowledge that in February 2016, ETHRA deposited $57,866.04 remaining from the account into the Pooled Trust. They allege, however, that Harry Hudson had transferred $110,000.00 from Conservatee's investment and other bank accounts into Account 5779 prior to ETHRA's appointment. They assert that ETHRA delayed too long in transferring these funds and failed to document that all funds in the account at the time the conservatorship was created were transferred. ETHRA does list in the final report and accounting as a "potential claim" regarding Account 5779 three checks drawn on the account in respective amounts of $5,375.00; $5,194.57; and $1,557.53.

Third, Petitioners assert that ETHRA presented insufficient documentation of the balance in a Regions Bank account owned by Conservatee, the balance of which was represented during final accounting in the amount of $4,022.00.

Finally, as to Conservatee's vehicle, Petitioners allege that ETHRA ignored their requests to secure the vehicle in storage and that as a result the vehicle was vandalized and rendered of nominal value. Petitioners assert that ETHRA failed to account for the vehicle in its final accounting as part of Conservatee's personal property. The final report and accounting reflects that ETHRA listed "Personal Property:  located at residence and . . . Storage" but did not specifically mention the vehicle as part of the personal property as it had in previous property management plans. Asserting that ETHRA had at one time valued the vehicle at $2,500.00, Petitioners further assert that ETHRA should be required to reimburse the conservatorship in the amount of $2,500.00.[9]

During the January 2017 hearing, Marilyn Hudson, on behalf of Petitioners, raised the subject objections to entry of the final report and accounting. As to the First Tennessee accounts as issue, Marilyn Hudson insisted that Conservatee's funds had not been fully accounted for while Mr. Reeves maintained that they had been. Marilyn Hudson and Mr. Reeves described different versions of whether Mr. Bowling had found the accounting acceptable, and Mr. Bowling was not present. At the close of the hearing, the conservatorship court orally directed that Mr. Bowling should be before the

---

[9] Petitioners' citation to the record for this valuation by ETHRA refers to a pleading filed by Petitioners. None of ETHRA's property management plans lists a specific value for the vehicle apart from its inclusion with all of Conservatee's personal property. We note that during the March 2017 hearing, Marilyn Hudson stated that the value of the vehicle according to Kelley Blue Book was $2,360.00.

conservatorship court if he had objections to the accounting as the Estate's personal representative. The court also orally directed Mr. Reeves to "make a diligent inquiry to find every First Tennessee statement . . . that exists or ought to exist from the time that ETHRA took over these accounts to the day that [Conservatee] passed away or the day that ETHRA ceased being the financial conservator."

Subsequently, during the March 2017 hearing, Mr. Bowling appeared before the conservatorship court. Mr. Reeves explained to the court that since the January 2017 hearing, ETHRA had "issued a subpoena to First Tennessee Bank for the full two years, two calendar years, of all of [Conservatee's] First Tennessee accounts." He stated that ETHRA had "obtained and distributed those documents a month ago, roughly, and reviewed them" and that he had "heard no response or objection to anything that they contained." However, Marilyn Hudson continued to voice Petitioners' objections to the final accounting. On the point of apparent discrepancies in bank accounts resulting from funds that had been distributed to beneficiaries since Conservatee's death, Mr. Reeves clarified that the final accounting represented the state of Conservatee's assets at the time of her death prior to such distribution.

At one point during the March 2017 hearing, the conservatorship court questioned Marilyn Hudson regarding whether there was "any concern with the final accounting," to which she replied in the affirmative. She explained:

> Just so you know, Your Honor, it's not such a concern that we're not going to get closed today. I just feel like it's important for the record for the Court to know, the accounting today is still – it doesn't comply with the statute.

As to the vehicle, when specifically questioned by the conservatorship court regarding what Petitioners were asking the court to do about the alleged vandalism to the vehicle, Marilyn Hudson replied: "I want the order that closes this case to reflect that the – that ETHRA is responsible for the damage of the Cadillac." The court then stated that a claim involving the vehicle would be a probate estate claim and explained considering any damage claims:

> [A]ny claim against the estate should be handled in probate, I think. And if you claim that the estate has been damaged by some party or Mr. Bowling considers that the estate has been damaged by the actions of some party, then Mr. Bowling can pursue that upstairs [in probate court].

On appeal, ETHRA asserts that the conservatorship court properly found that all of the claims raised by Petitioners as objections to the final accounting should be treated

as claims under the exclusive control of the Estate's personal representative in probate court. In support of this argument, ETHRA relies in part on this Court's decision in *In re Estate of Hendrickson*, No. M2008-01332-COA-R9-CV, 2009 WL 499495, at *7 (Tenn. Ct. App. Feb. 25, 2009) (reversing the trial court's grant of a daughter's motion to intervene in the estate in an attempt to recover assets allegedly misappropriated from her deceased mother prior to the mother's death). The *Hendrickson* Court stated in relevant part:

> The probate court authorized [the intervenor] to pursue claims against Defendant on behalf of the estate that the Administrator has chosen not to pursue. We have determined this was error because it contravenes the well established law of this State, which for more than two hundred years, has recognized the exclusive right of the personal representative to maintain suits to recover debts due to the deceased, but for two exceptions; where it is established that the personal representative is in collusion with the debtor, or where the personal representative is refusing to take the necessary steps and the debt is about to be lost.

*Id.* at *7 (internal citations omitted). *See also Bishop v. Young*, 780 S.W.2d 746, 750 (Tenn. Ct. App. 1989), *perm. app. denied* (Tenn. Nov. 27, 1989) ("In substance, this is a suit by distributees of an estate to recover alleged assets of the estate for the ultimate benefit of the distributees. To the extent that it seeks to have the Chancery Court supersede the function of the Probate Court, it is not well grounded.").

Insofar as Petitioners' objections regarding the bank accounts and the vehicle may result in claims that can be recovered by the Estate, we agree with ETHRA on this point. However, we emphasize also that "[c]onsistent with the court's duty under [what is now codified at Tennessee Code Annotated § 34-3-107(a)(5) (Supp. 2017)] 'to properly care for the . . . property of the disabled person,' the court having jurisdiction over a conservatorship should approve a conservator's final accounting only when it fully and accurately accounts for the disabled person's estate." *In re Conservatorship of White*, 1997 WL 629958, at *5.

In this case, the conservatorship court has not memorialized in its written order any resolution of Petitioners' objections other than to refer them to probate court. The conservatorship court also has not memorialized its rationale for entering the final accounting over Petitioners' objections. We decline to speculate as to the conservatorship court's reasoning from the transcripts of the January 2017 and March 2017 hearings. As our Supreme Court has explained: "It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders."

25

*Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) (quoting *Anil Constr., Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at *8 (Tenn. Ct. App. Aug. 7, 2014)).  We therefore vacate the portion of the conservatorship court's order approving the final report and accounting and closing the conservatorship over Petitioners' objections.  We remand for entry of findings of fact and conclusions of law concerning the petitioners' objections to the final accounting and, when appropriate, closure of the conservatorship.

## VII.  Conclusion

For the reasons stated above, we vacate the portions of the conservatorship court's judgment transferring to the probate court Petitioners' counsel's amended claims for attorney's fees.  We also vacate the portion of the conservatorship court's judgment approving the final report and accounting and closing the conservatorship over Petitioners' objections.  We remand for (1) entry of findings of fact and conclusions of law concerning Petitioners' objections to the final accounting and closure of the conservatorship when appropriate; (2) entry of findings of fact and conclusions of law concerning whether the attorney's fees requested in Petitioners' counsel's pending attorney's fee motions were incurred in relation to the conservatorship and, if so, whether reasonable attorney's fees should be granted upon each of these motions; (3) entry of an order directing ETHRA to present a detailed explanation of the basis for its representative's claim for fees and expenses for the conservatorship court's consideration based upon the factors provided in Tennessee Code Annotated § 34-1-112(a); and (4) collection of costs below.  The undisputed grant of attorney's fees to ETHRA's counsel is affirmed.  Costs on appeal are taxed to the conservatorship of Mary Ruth Davis Hudson, with the appellee, East Tennessee Human Resources Agency, in its capacity as financial conservator of Conservatee's estate, instructed to remit payment of said costs.

_____
THOMAS R. FRIERSON, II, JUDGE

26