Pee Cueiam.
 

 At June sessions, 1810, of Smith County Court, Andrew Greer recovered judgment on motion against Sampson Williams, executor of Peter Turney, deceased. The entry of the judgment recited, that as it appearing to the court that judgment hath been obtained in this court by Frederick Uhls against Andrew Greer, as security of Peter Turney, deceased, on a bond for $800, and $50 damages, and that said Greer hath paid the judgment in full, with $5.25 interest thereon, and $8.01-J costs; * it is therefore considered by this court, &c., the judgment was entered for $863.26J to be levied of the goods and chattels, lands and tenements of the deceased in his hands to be administered. In August, 1810, S. Williams obtained a writ of
 
 certiorari
 
 to remove the cause to the Circuit Court, and in his petition stated three reasons. First, that the execution had issued against the heirs of Peter Turney on a judgment against the executor, and had been levied on their land without any
 
 scire facias
 
 against said heirs. Secondly, that the covenants contained on the condition of the bond which Turney and Greer had executed, were not broken. Thirdly, that Williams, the executor, was not notified of the suit against Greer. Fourthly, that judgment against Greer was entered without defense.
 

 On the return of the proceedings, the court, having heard the allegations of the parties, ordered that the
 
 certiorari be
 
 dismissed.
 

 Shortly after this
 
 certiorari
 
 was dismissed, Sampson Williams procured a second
 
 certiorari
 
 to be issued, returnable to March term, 1811, which was founded on a petition stating, that the bond on which the judgment against Greer was entered was not proved and recorded, and that no legal demand had been made on it of the executor of Turney; secondly, that Greer withdrew his pleas to the action, and confessed judgment for $50 more than the land was worth; thirdly, that Greer had not paid the judgment recovered against him; fourthly, that no notice had been given to
 
 *459
 
 him, Williams, of the motion made by Greer for judgment; fifthly, that Greer was not entitled to recover against him, nor could he legally recover without the intervention and verdict of a Jury-
 

 At March term, 1811, a rule was entered to show cause why the
 
 certiorari
 
 should not be dismissed, and reasons were filed. The first was, because another petition containing the same matter was before granted * and dismissed on the merits ; secondly, for all the reasons filed for the dismission of the former petition.
 

 The court overruled the motion, and directed a new trial.
 

 At August term, 1813, the defendant, Williams, moved to quash the proceedings of the Count}*- Court, which was refused.
 

 At March term, 1815, a jury was impaneled to try certain facts submitted to them by the court, and found, first, that Andrew Greer was security for Peter Turney on the bond ; secondly, that he has paid the full amount of the judgment recovered; thirdly, .that S. Williams hath not fully administered, but hath yet in his hands, unadministered, $539.54.
 

 The court gave judgment for $300, the judgment of the County Court, with interest from the date, and costs to be levied, &c.
 

 Two hills of exceptions are filed in the cause. The first, for a refusal by the court -to grant a continuance of the cause on an affidavit stating that two material witnesses were absent,, one of whom could prove the price which Turney received for the land.
 

 The other, that the executor had advertised as the law directs, more than two years before the suit was commenced by Uhls against Greer. The bill of exceptions states that- the continuance was refused because it was the fourth application. Another reason might have been added, that the testimony would not have been material. The price given for the land is not the criterion of damages, but the value at the time the covenant is broken, with interest.
 
 [1]
 
 The proof of advertising would not have availed anything. Greer’s right to indemnity did not accrue till he paid the money; and Uhls was not bound to take any notice of it.
 

 The second bill of exceptions states in substance that the plaintiff, Greer, produced the record of the judgment recovered by Uhls, and the bond on which * judgment was
 
 *460
 
 given, and prayed the court to impanel a jury to inquire whether he, Greer, was not surety for Turney. This was objected to, first, because the bond had not been recorded and a demand made for a conveyance before the commencement of the suit against
 
 Greer, or
 
 this suit; secondly, because Greer was not legally bound in said bond, and had failed to defend himself in the action; these objections were overruled. The defendant, Williams, then moved the court to cause the jury to inquire, first, whether the defendant has fully administered; secondly, whether the recovery by Uhls, against Greer, was not by collusion and fraud; thirdly, whether Williams, as executor, had not advertised as the law directs, at least two years before the suit brought against Greer. The court refused to direct an inquiry on the two last points, and to these opinions the defendant excepted. In the bond referred to in the bill of exceptions, dated the 30th of January, 1802, Turney bound himself, his heirs, &c., to H. M‘Elvey, in a penalty of $300, to make a good title for 100 acres of land, describing it, as soon as a grant could be obtained for it. Greer is not named'in the body of the bond or condition, but it is signed and sealed by him and Peter Turney, and assigned by M‘Elvey to Uhls, who commenced an action of debt on the penalty in June, 1809, against Greer. He craved oyer, and by his attorney pleaded covenants performed, and afterwards, at March sessions, 1810, came the parties by their attorneys ; and the defendant by his attorney, relinquishing his former plea, acknowledged the plaintiff’s action against him. It is therefore considered by the court that the plaintiff recover, &c.
 

 Two objections are here made to proceeding in the trial, that Greer was not legally bound in the bond and did not defend himself, and that the bond was not recorded and a demand made before the commencement of the suit.
 

 * Though Greer’s name is not mentioned in the bond, yet he signed, sealed, and delivered it, and must be considered as bound thereby. 5 Miss. T. R. 538, and the authorities there cited. Besides, he was considered as an obligor in both the petitions for a
 
 certiorari.
 
 As far as the rights of the obligees are concerned, every obligor is considered as a principal to the full extent of his obligation. The obligee may proceed against any one of the obli-gors, and recover from him the whole amount to which he is entitled. It is only between the obligors that the question can arise who is principal or only surety.
 

 
 *461
 
 The act of 1794, ch. 5, which requires bonds for the conveyance of lands to be recorded, a copy to be produced to the executor of a deceased obligee, and a demand and refusal or failing on the part of the executor to convey before the personal estate of the deceased shall be charged, ought not and it is believed does not impair the right of the obligee to proceed against the obligor who is living. The bond need not be recorded except as between the obligee and executor or administrator of the principal obligor. It need not be recorded as between the obligee and living co-obligor. In the former case it is required only for the information of executors, who otherwise could not so well ascertain the genuineness of the bond, and to furnish him with an unexceptionable voucher on settlement. But information of this kind is not necessary for one who is charged as obligor, for he knows as well without the information as with it, whether it be a genuine instrument or not.
 

 The remedy by motion, pursuant to the act of 1801, ch. 15, will extend by the general expressions used in the act to all bonds without exception, not to bonds for money only, and includes the bond in question. The act of 1809, ch. 69, directs a jury to be impaneled to inquire concerning the suretyship ; but * it is only necessary when that fact is not apparent on the face of the bond.
 

 Since the act of 1801, the court will not permit a surety to confess judgment, whether he intend to proceed against the principal at common law or under that act, if the principal in court offer to defend and tender sufficient counter security. If such offer be not made, he is not obliged to defend since the act any more than before. And indeed he stands exactly as before, if such offer be not made. Before the act, he might pay without suit, and recover over against his principal. But if he paid too much, or confessed judgment for more than was legally due, he could recover only for so much as was legally due. Notice of a suit need not be given by a party to his principal, or to the executor; for the contract implied by law between them that the surety shall be absolutely indemnified; not upon condition that he give notice of the suit commenced against him. The principal hath notice’ enough when he is apprised that the bond is not satisfied by himself. What if the principal or his executor be out of the State, must the surety be without remedy because he hath not been able to give notice be
 
 *462
 
 fore judgment against himself? The obligee is not bound to wait a moment.
 

 The surety, under the act of 1801, need not give notice of his motion for judgment. The act requires no more than a motion in the same court where judgment is rendered against him, or the production of the record, when his motion is made in another court. The defendant to the motion for judgment may indeed be estopped by a citation in the original suit. Without such notice he is not precluded from alleging every material fact, either under this act or-at the common law. If judgment be taken on motion against an executor who has fully administered, that may be shown on the
 
 sci. fa.
 
 to charge the executor
 
 de bonis propriis.
 

 * For a matter already acted on and appearing of record, a writ of error would be the proper remedy.
 

 If without notice the original judgment be confessed, and be for too much, or there be any other new fact, material, alleged by the defendant to the motion, these may be brought into examination by stating them in a petition for a
 
 certiorari
 
 and on a motion to dismiss; the court, in order to discover whether an inquiry be necessary or not, would on affidavits ascertain the probability of their existence, and thereupon divert a more solemn inquiry, to the end that such material facts might be finally established. The defendant would then have the same advantage he would have had by virtue of the motion. If, after hearing affidavits concerning these allegations, the court dismiss the
 
 certiorari,
 
 that ought to be taken as conclusive proof of their non-existence. Had he appeared in opposition to the motion for judgment when made, the court would have heard his allegations, in a form not much more solemn than they are now heard upon the motion to dismiss the
 
 certiorari.
 
 As to any antecedent facts which might have been stated in the same petition, these too ought to be excluded from further investigation, unless perhaps under some very special circumstances, otherwise new facts which were known or might have been known, might be alleged
 
 ad infin-itum
 
 as new causes for further
 
 certioraris,
 
 and the protraction of controversies be rendered endless. Every second certiorari, therefore, is void, unless supported by some extraordinary circumstance, which this is not; the second certiorari, and all the proceedings consequent on it, are illegal and erroneous. But to what point does this lead us ? Can Williams, the plaintiff, here assign that for ei’ror
 
 *463
 
 which is for his own advantage, and hath been done at his instance ? He cannot. One of the errors assigned by him is a refusal to inquire into the issue tendered, of fraud and collusion between Greer and Uhls the assignee of the * bond. We incline to the opinion that the court ought to have permitted and to have directed this issue to be tried had the cause been properly brought up. What then ? Shall we reverse this 'judgment and remand the cause for a new trial, when we are satisfied by inspecting the record,- that neither this or any other fact ought to have been tried on this second
 
 certiorari ?
 
 Should we now send it back and a .judgment be rendered against Greer, the result would be that, he could procure the whole proceedings on the second
 
 certiorari
 
 to be reversed. Such judgment must now be given by this court as the Circuit Court ought to have given.
 

 Let all the proceedings on the second
 
 certiorari
 
 be set aside, and the judgment of the Circuit Court refusing to dismiss this
 
 certiorari
 
 be reversed. And let the former judgment to dismiss the first
 
 cer-tiorari
 
 be affirmed.
 

 See
 
 Will
 
 v.
 
 Witt,
 
 5 Hay. 276; King’s Digest, 1982, 6659, 10,140, 10,141, 11,241, 11,243.
 

 [1]
 

 See
 
 Perkins
 
 v.
 
 Hadley, 4
 
 Hay. 143, and note
 
 sub fin.