CHARLES P. MARSH *v.* NATHAN AND JOSHUA DAVIS.

*Assumpsit. Evidence. Disclosure of trustee. Judgment.*

If A. cause a note payable to him, to be transferred and made payable to B., for the purpose of keeping the same out of the reach of the trustee process, it would be fraudulent, as to the creditor A.; and the maker of the note could properly be adjudged trustee of A., so long, at least, as it remained in the hands of A. or B. or of any other person cognizant of, and privy to, such fraudulent intent.

The declarations and conversations of A. and the maker of the note, in relation to the transfer, if a continuing negotiation, and said between the parties during the arrangement, are admissible, as part of the *res gestae.*

But if such transfer was for the benefit of B., as a particular creditor of A., and a preference merely, among his creditors, it is not fraudulent.

Testimony to rebut the inference of fraud arising from the negotiation and transfer of the note, is admissible.

If a trustee makes but a partial disclosure, without giving a full statement of all the facts, as well those that would operate to his discharge, as those which would charge him as trustee, the judgment will furnish him no protection; the trustee, from his relation to the payee of the note, as well as for his own security, should notify the payee of the note of the pendency of the proceedings.

And if the payee and his assignee are neither made a party to the trustee proceeding, and both remain ignorant during the whole proceeding of that suit, they will not be bound by the judgment.

ASSUMPSIT upon a promissory note. Plea, the general issue, and trial by jury.

On trial, the plaintiff gave in evidence the note declared upon and rested.

The defendants then called Rufus Davis, who testified that the defendant Nathan Davis, in July, 1850, met one Daniel Aikens in the road, about three and a half miles from the residence of the defendant, and spoke to him about a note, which he, Daniel Aikens, then held against said defendant, and asked defendant if he

could pay it; that defendant replied that he could not pay it then, but would make it out shortly; that Aikens then said he wanted defendant to write a new note, running to his brother, Hiram Aikens, and said *he was afraid defendant would be trusteed on the note, or the note which said Daniel then held;* that defendant told him he would write a new note for thirty dollars, and that defendant asked Daniel if he wanted to have the note signed by Joshua Davis; that Daniel replied, he might do as he pleased, that his name was on the old note; that said Daniel further said, that he should be over in a few days and bring the old note and take the new note; witness further testified, that defendant Nathan Davis thereupon went home and wrote the note now in suit, and the defendants signed it, Daniel Aikens not then being present.   To the admission of all which evidence, plaintiff objected.   The objection was overruled, to which plaintiff excepted.

The defendant then called Hiram Aikens, who testified that he did not receive the note from the defendants, and did not know at the time, that it was given; that the defendant Nathan Davis called upon the witness, a few days after the execution of the note, and said to him, that he, defendant, settled with Daniel Aikens a few days before, and had given him a note, running to the witness, and wanted to know *when he should want his pay upon it;* that he, witness, replied *that he should want the pay soon, to pay out where he was holden for Daniel Aikens;* and that the defendant replied, *he would pay it soon, or before a great while.*   Witness testified that he was then holden as *surety* for Daniel Aikens to a *large amount,* and that Daniel Aikens *was then indebted* to witness to a large amount for advances.

Witness further testified, that there was then outstanding in the hands of Zerah Lull, a deputy sheriff, an execution in favor of the Woodstock Bank, against Daniel Aikens, Hiram Aikens and Stephen Bosworth, which *was* the debt of Daniel Aikens, said Hiram and Stephen being sureties, which execution was dated June 20th, 1850, and issued from Windsor county court; that Bosworth and Daniel Aikens were *insolvent,* and the sheriff *required payment of the execution to be made by the witness;* that the witness desired said Lull to obtain all he could from Daniel, and thereupon said Lull called upon Daniel early in August, 1850, and Daniel placed in his hands various papers, as collateral security for the

payment of the execution, and among them the note in suit; that said note was never seen by witness until after it was turned out to said Lull. That in August, 1850, and before the execution expired, Lull required payment of the execution to be made, and then the debtors in said execution, met said Lull, at plaintiff's office, and there was the first time witness ever read said note, or had possession thereof, and that then, by consent of said Daniel, he turned out said note to plaintiff, as security to him for advancing part of the money to pay said execution, and that witness was holden to plaintiff for the amount of said note, if the same was not collected of the defendants, for the advances so made by plaintiff.

The said Lull testified, that he delivered over said note to plaintiff, by consent of said Daniel and Hiram. It did not appear that plaintiff ever had knowledge that Daniel Aikens had ever any interest in this note. The plaintiff offered to prove that before the execution of the note in suit, it had been agreed between Daniel and Hiram, that said Daniel should procure notes to be executed to Hiram, as the note in suit was, as security for the liabilities and advances, by said Hiram for Daniel, as before stated. Defendants objected to the admission of this testimony, and it was excluded by the court. To which plaintiff excepted.

The defendants then offered in evidence, the certified copy of the record of a judgment, in favor of one Stillman F. Smith against Daniel Aikens and the defendant Nathan Davis, as trustee, also a receipt from said Smith to Nathan Davis. To the admission of said record, the plaintiff objected, on the ground that said judgment and satisfaction thereof, was no defense to this suit. The objection was overruled by the court. To which plaintiff excepted. Upon these facts the court directed the jury to return a verdict for defendants. Exceptions by plaintiff.

*Washburn & Marsh* for plaintiff.

1. The conversation sworn to, did not occur at *the time* of the act done, which it is supposed to refer to.

2. It did not occur at *the place* where the act was done, but in the highway, three or four miles from it. *Enos* v. *Tuttle,* 3 Conn. 247. *Elkins* v. *Hamilton,* 20 Vt. 627.

3. So far as this plaintiff is concerned, this trustee process ought not to affect him. It was " *res inter alias acta*" and that principle

should apply in its full force ; as the court, per HALL, J., say in *Seward* v. *Heflin*, 20 Vt. 144, " It is contrary to the plainest " principles of justice, that he should be bound by a judgment to " which he was not a party, and to which he had no opportunity " to object."

Indeed, we think the law as laid down in that case, is decisive of the case at bar ;— the trustee's disclosures were deficient in an important particular in omitting to state what Hiram had stated to him, about *his wishing the note paid to him soon, in order to pay out where he was holden,* and the assurance also, that he, Davis, had given Hiram, that he would *pay the note to him.*

The case of *Camp* v. *Scott and Tr.*, 14 Vt. 387, can furnish no authority for a case like the present, so different from that case in all its important facts.

*I. S. Belcher* for defendants.

The note was the property of Daniel Aikens when given, and remained his property, until it was transferred to the plaintiff.

It was liable to be attached by trustee process, notwithstanding it was made payable to Hiram Aikens, until it was transferred, and notice of the transfer given to the makers. *Camp* v. *Scott and Tr.*, 14 Vt. 387.

The conversation between Daniel Aikens and defendant Nathan Davis was *original,* not *hearsay* evidence. The fact in controversy was, whether such conversation was had, not whether it was true. Greenleaf Ev. § 100. *Lyman* v. *Lull et al.*, 20 Vt. 349. *White* v. *Morton*, 22 Vt. 15.

The record of a judgment against Daniel Aikens and defendant Nathan Davis' trustee, was admissible. It shows an attachment and payment of the note in suit.

The opinion of the court was delivered by

ISHAM, J. The note upon which the plaintiff has declared was executed by the defendants, on the 16th of July, 1850, and made payable to Hiram Aikens, or bearer, and which soon after, was transferred to the plaintiff by the payee of the note. Its consideration, was the balance due on a previous note, given by the defendants to Daniel Aikens, which was given up on the execution of this.

The defense rests upon the validity and payment of a judgment on this note, in a trustee process in favor of Stillman F. Smith against Daniel Aikens, the payee of the original note, as principal debtor, and this defendant Nathan Davis, as trustee,—and it is claimed that the payment of that judgment by the defendant, makes a good defense in this action. To give that effect to the judgment and payment, it must appear that this note, at the time of the service of the trustee process, was in reality the property of Daniel Aikens, and subject to be attached by his creditors, and that the proceedings in the trustee process were of that character which will conclude the rights of the plaintiff to this note. For the purpose of proving that Daniel Aikens was in reality the owner of this note, testimony was introduced by the defendants, to show that the exchange of notes, from Daniel to Hiram Aikens, was made with a fraudulent design, and there can be no doubt, that if the original note to Daniel Aikens was given up for the one now in suit, payable to Hiram Aikens, for the purpose of keeping its avails from the creditors of Daniel Aikens, and placing the same out of the reach of a trustee process, it would be subject to be attached as his property, and the makers of the note could properly be adjudged as the trustees of Daniel Aikens. And the note would continue subject to that attachment, so long, at least, as it remained in the hands of either of those parties, or of any other person cognizant of, and privy to, such fraudulent intent,—for such a disposition of a *chose* in action would be as void against creditors, as any fraudulent disposition of personal property at common law. This doctrine was decided in the case of *Camp* v. *Scott and Trustee*, 14 Vt. 387.

The questions which are now presented, arise on the admission and rejection of testimony offered in evidence, during the trial of the case. To prove that exchange fraudulent, the defendants introduced evidence, showing the declaration of Daniel Aikens, that he was fearful the original note would be trusteed, if it remained in that situation, to prevent which he requested not only its renewal, but that the new note should be made payable to Hiram Aikens, and that in pursuance of that request, the note was so exchanged, a few days after. For that purpose, we entertain no doubt that the declarations and conversation between these parties, as detailed in the exceptions, were admissible, for it was a

continuing negotiation, and what was said and done by the parties during that arrangement, and for the purpose of effecting that object, was admissible as part of the *res gestae;* it was cotemporaneous with the main fact, and tended to illustrate its character and object. 11 Pick. Rep. 362. 9 Bing. Rep. 349. 1 Green. Evid. § 110, 11.

If that testimony was admissible on the part of the defense, it was equally competent for the plaintiff to rebut any inference of fraud arising from that circumstance, and from the further circumstances, that Daniel Aikens retained the possession of the note for a season, and that Hiram Aikens was not only ignorant of that exchange, but was also ignorant that the new note was made payable to himself, until he was informed of it, a few days after, by Nathan Davis. As explanatory, therefore, of these circumstances, it was proper for the plaintiff to prove that Hiram Aikens was liable on debts for Daniel Aikens, that he had made advances for him, and that he was indebted for such advances. And that in consideration thereof, an agreement was made between them, that Daniel Aikens should procure notes or claims due to him, payable to Hiram Aikens, as security for such liability and advance, and if this note was exchanged and subsequently delivered under that arrangement and for that purpose, before the claims of any other creditor arose thereon, the jury should have been permitted to have heard the evidence as rebutting such inference of fraud, and showing the reason for desiring that exchange of notes, that it might not be trusteed. For instead of manifesting a disposition to place the note beyond the reach of his creditors, its tendency was to show that no such intent existed, and there were used proper efforts to appropriate it for that purpose, and for the benefit of this particular creditor. If there were other creditors, it may be considered a preference among them, but it was one he had a right to make and which the law will allow. 5 Tenn. Rep. 235. Chitty on Cont. 413.

In looking at the facts in this case, we find that an execution was in the hands of the sheriff, against Daniel and Hiram Aikens and one Bosworth, at the time of the exchange of the note which was for Daniel Aikens to pay, and that Bosworth and Daniel Aikens were insolvent. This may have been the reason why he wished the exchange and to prevent its being trusteed, that it

might be available for Hiram Aikens in payment of that execution. We also learn, that within a few days after its execution, and nearly three months before the service of the trustee process, the note was handed to Hiram Aikens, the payee, who at that time, in the presence of Daniel Aikens and the officer, indorsed it to the plaintiff on receiving its amount, and which amount was then applied on the execution.

Upon these facts, it is difficult to see what circumstances of fraud exist in the case, even as between Daniel and Hiram Aikens, much less as affecting the plaintiff. It is obvious, that this testimony should have been received, and the jury instructed, that if such liabilities existed from Daniel to Hiram Aikens, and if this note was exchanged in pursuance of an arrangement to place in his hands available means for his security and indemnity, it was such a disposition of the note that would be unaffected by any fraudulent considerations.

The note was transferred to the plaintiff by Hiram Aikens early in August, 1850 ; from that period Daniel Aikens had no interest or property in the note. . It being a negotiable instrument, the legal interest passed from him to Hiram Aikens on its delivery, and to the plaintiff by the indorsement of Hiram Aikens.

When, therefore, the trustee process was served on the 14th of November, 1850, Daniel Aikens had no interest in that note that could be reached by that attachment. Its legal and equitable interest had vested in the plaintiff nearly three months before, by a legal transfer from the payee of the note.

Neither was it necessary to protect his title to this note, that notice should have been given by the plaintiff to the makers of the note of the assignment to him, in order to protect the same from being trusteed as the property of Daniel Aikens. It would have been necessary, if the original note payable to Daniel Aikens had been assigned to Hiram Aikens, and by him to the plaintiff, as they would then have stood and claimed the note as assignees of Daniel Aikens. But that note was canceled, and on the execution and delivery of this note to Hiram Aikens a new and original debt was created thereby, and in relation to which he did not stand as the assignee of Daniel Aikens. And when this note was transferred to the plaintiff, he stood as the assignee of Hiram Aikens only ; notice, therefore, from the plaintiff to the makers of

the note, of the assignment to him, was necessary only where Hiram Aikens was prosecuted as principal debtor, and the defendants summoned as his trustee, and was not necessary to protect it in his hands from being attached of Daniel Aikens, for the reason before assigned, that the plaintiff is not the assignee of Daniel Aikens.

The remaining question in the case has reference to the effect upon the rights of the plaintiff to this note, of the proceedings under the trustee process in favor of Smith against Daniel Aikens and this defendant as trustee, and the payment of the judgment rendered thereon by the trustee. The record of this judgment and the evidence of its payment was admitted by the court, and the jury directed to return a verdict for the defendants. The case of *Seward* v. *Heflin*, 20 Vt. Rep. 148, is applicable, and seems to be decisive upon the questions arising on this part of the case. As a judgment it can have no effect upon the rights of the plaintiff, for the satisfactory reason, that he was not a party to the proceedings. It was the duty of the trustee, arising out of his relation to the payee of the note, or his assignee, if he knew of one, as well as for his own security, to have notified them of the pendency of those proceedings. This he might have done by application to the court to issue his citation to the payee, or his assignee to appear and protect his claim. Comp. Stat. p. 263, § 53. If the justice had refused or neglected to issue such notice, then he should have given personal notice to him for that purpose, and probably that would so far have made him a party to those proceedings, that the judgment would have been conclusive. But as no such proceedings were had, and as nothing appears but that the payee of the note and this plaintiff were, during the whole proceeding, in entire ignorance of that suit, it would be great injustice to say that they should be bound by that judgment, to which they were not parties and had no opportunity to object.

Neither is there any propriety in permitting Nathan Davis to avail himself of that judgment and payment, in his discharge of the present suit, unless his disclosure was honestly made, with a full statement of all the facts, the tendency of which would operate to his discharge, as well as those which would charge him as trustee. In his disclosure he simply stated, "that the new note "was payable to Hiram Aikens or bearer, and that he saw Mr.

"Aikens a few days after the note was given, and that he said he "knew nothing about any such note." Whereas, it appears that he had been informed by Hiram Aikens, that he was holden for Daniel Aikens, and that he should want payment of the note soon, to pay the claims upon which he was liable for him, and that Mr. Davis then promised to pay Hiram Aikens the note before a great while. These important considerations were suppressed by Mr. Davis in his disclosure as trustee, and which ought to have been disclosed by him before the court, in the exercise of common justice towards the payee of the note, or his assignee. And for this suppression of material facts in his disclosure there is no propriety in permitting him to avail himself of the judgment and payment in his discharge of this suit. The conviction is not easily overcome, that there was a desire and an attempt to deprive the holder of this note of its avails, by keeping him ignorant of those proceedings, until the creditor in that suit had secured to himself the amount by a judgment against the trustee. The case in the 20th of Vt. Rep. is very decisive that such a disclosure is ineffectual as a protection to the trustee.

The result is, that the judgment of the county court must be reversed.