MARION COUNTY (MORELAND v.). See Case No. 9,794.

---

## Case No. 9,088.

### MARIONNEAUX'S CASE.

[1 Woods, 37;[1] 13 N. B. R. 222.]

Circuit Court, D. Louisiana. April Term, 1870.

BANKRUPTCY—SETTING ASIDE DISCHARGE—FRAUD KNOWN BEFORE DISCHARGE—IMMATERIAL ERRORS ON APPEAL.

1. A bankrupt's discharge will not be set aside where the fraudulent acts on which petitioning creditors rely for the annulling of the discharge

were suspected and believed to exist before the discharge, and when the evidence (discovered after the discharge) to prove such fraudulent acts is incompetent and inadmissible.

[Cited in Re Shaw, 9 Fed. 497.]

2. When upon the whole record it appears that the petitioner had no case, the judgment of the court below will not be reversed, even though the court may have erred in some of its rulings.

[Appeal from the district court of the United States for the district of Louisiana.]

This was a petition filed in the district court by certain creditors of A. P. Marionneaux, a bankrupt, to annul his discharge, on the ground that it was fraudulently obtained.

Chas. E. Fenner, for petitioners.

E. C. Billings and A. de B. Hughes, for bankrupt.

WOODS, Circuit Judge. The petition alleges in substance that the order of discharge was granted on February 24, 1869; that the bankrupt fraudulently concealed and failed to surrender for the benefit of his creditors a certain judgment in the case of Pointer v. Mutual Ins. Co. [unreported], rendered in the sixth district court of New Orleans parish. That said judgment was really the property of the bankrupt, but the consideration on which it was founded was fraudulently conveyed to Pointer; that for the purpose of giving value to the transfer, Marionneaux took from Pointer a note or notes, which he held prior to and at the time of the adjudication in bankruptcy, and that he neither surrendered the property in the judgment, nor the notes. That the petitioners have long suspected and believed the said facts to be true; they were always stoutly denied by Marionneaux and by Pointer, and petitioners had no knowledge of the same until after the discharge of Marionneaux, when, from the dying declarations of Pointer, who died on February 20, 1869, and certain provisions in his will, they did ascertain that the facts in reference to said judgment were as stated by them in their petition.

I have been unable to determine how this case comes into this court. It is called an appeal, but there is no testimony submitted to the court, and the agreed statement of facts does not cover all the questions of fact in dispute in the court below. There are two bills of exceptions incorporated in the record, which would indicate that the case is here on error, but there is no writ of error, assignment of error, prayer of reversal or joinder in error. If the case is considered as an appeal, it is sufficient to say that there is no testimony whatever submitted to the court, and the agreed facts do not prove or tend to prove that the discharge in bankruptcy of Marionneaux was fraudulently obtained. On the contrary, the agreed facts do not touch that question at all. This court cannot, of course, say that the discharge ought to be set aside for fraud when there is no testimony whatever showing fraud.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Regarding the case as here upon error, we might affirm the judgment of the court below, because no errors are assigned. I have, however, looked into the record to ascertain whether the court below fell into any error for which its judgment should be reversed. I think it very clear that if the petitioning creditors relied solely upon testimony to prove that Marionneaux obtained his discharge by fraud, which was known to them before the discharge, and which in fact they had used in a judicial proceeding to establish the identical act of fraud set up in this petition, they have no standing in court. If we look into the record we find that they did rely on other testimony, namely, the dying declarations of Pointer, and certain provisions in his will which could be considered as nothing more than dying declarations reduced to writing.

It is a well settled rule of evidence that dying declarations are admissible only in criminal cases, and when the death of the deceased is the subject of the change and the circumstances of the death are the subject of the dying declarations. Rex v. Mead, 2 Barn. & C. 605; 1 Greenl. Ev. § 156. As dying declarations, the statements of Pointer were clearly inadmissible. Nor could they be admitted as the declarations of one of two conspirators, for to make such proof competent, it must be preceded by proof of the conspiracy. 1 Greenl. Ev. § 111. They cannot be given as a part of the res gestae, for the declarations were long subsequent to the transactions to which they relate. Rawson v. Haigh, 2 Bing. 99, 104; 9 E. C. L. 335; Marsh v. Davis, 24 Vt. 363; New Milford v. Sherman, 21 Conn. 101; Johnson v. Sherwin, 3 Gray, 374. This additional proof, then, on which petitioning creditors relied, was the merest hearsay evidence, and not admissible; and, in fact, was no evidence at all. This testimony, when offered, would have been properly excluded, and that would have left the petitioning creditors to rely solely on facts which were well known to them long before the discharge of Marionneaux, to prove fraud in obtaining his discharge. So that, even if the court below erred in its rulings, it did not err to the damage of petitioning creditors. They had no case, and could not by any possibility have succeeded had the rulings of the court been in their favor upon all the points reviewed. In their petition they set out the nature of the new evidence that they have discovered since the discharge of Marionneaux. It is the dying declarations of Pointer. The record shows that they had no case, and that their petition should have been dismissed. A writ of error brings up the whole record, and the plaintiff in error may take advantage of a fatal defect in the declaration. Bank of U. S. v. Smith, 11 Wheat. [24 U. S.] 171. There is no error in this record for which the judgment should be reversed.