IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 13, 2026 Session

**IN RE CONSERVATORSHIP OF BETTY A. WINSTON**

**Appeal from the Probate Court for Madison County**
**No. 19-17702        Roy B. Morgan, Jr., Senior Judge**

———————————————————

**No. W2025-00623-COA-R3-CV**

———————————————————

Appellant was named conservator over her mother in 2019 over her sibling's objection and posted a $25,000.00 surety bond in connection with the conservatorship. After several years in which accountings were approved by the trial court, a new judge was designated to preside over the case. The new trial judge refused to approve several of the expenses in the later accountings, finding that they were either not for the benefit of the ward or constituted payment to the conservator without prior court approval. As a result, the trial court ruled that the conservator was required to reimburse over $30,000.00 in expenses to the conservatorship account. Appellant argues that the trial court erred in finding that these expenses were unauthorized and directing reimbursement, as well as in granting a judgment to the conservator's surety for the amount it paid to reimburse the conservatorship account pursuant to the surety bond. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed
and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which JOHN W. MCCLARTY, P.J., E.S., and VALERIE L. SMITH, J., joined.

Alison Winston, Jackson, Tennessee, Pro Se.

Vincent K. Seiler, Jackson, Tennessee, for the appellees, Russell Winston and Andrea Lewin.

Charles H. Barnett, IV, Jackson, Tennessee, for the appellee, Sara E. Barnett, Substitute Conservator.[1]

---

[1] Charles Barnett filed a notice of appearance in this matter on December 15, 2025. Sara Barnett filed her brief pro se and was the attorney who appeared at oral argument.

Melissa Jane Lee, Jennifer Sherman Schnall, and Catherine C. Farone, Nashville, Tennessee for the appellee, State Farm Fire & Casualty.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2019, Petitioner/Appellant Alison Winston ("Appellant") filed a petition to establish a conservatorship over her mother, Betty A. Winston ("Ward") in the Madison County General Sessions Court, Probate Section ("the trial court"), with Chancellor James F. Butler presiding by interchange. A guardian ad litem was appointed for Ward; Appellant's sister, Appellee Andrea Lewin, eventually filed a motion to intervene and a counterpetition, asking that a public conservator be appointed. Following a hearing, the trial court appointed Appellant to serve as conservator in May 2019.[2] Per the court's order, Appellant obtained a bond in the amount of $25,000.00 from Appellee State Farm Fire and Casualty Company ("State Farm") as surety. Appellant filed a property management plan in July 2019. The plan detailed certain expenses that were owed monthly by Ward, including a home mortgage, two unsecured loans, a car loan, utilities and cable television, healthcare expenses, car insurance, food, and transportation. The plan did not include any provision permitting Appellant to reimburse herself for any expenses or to compensate her for her services without court approval.

In the years that followed, Appellant filed periodic accountings with the trial court, all of which were approved by both Chancellor Butler and a successor trial court judge.[3] Relevant to this appeal, Appellant submitted one such accounting on August 3, 2023.[4] Although a hearing was scheduled on this accounting for April 5, 2024, the accounting was not at that time approved. Instead, Chief Justice Holly Kirby entered an order on May 6, 2024, designating Senior Judge Roy B. Morgan Jr. to hear this case "to its conclusion[.]" A hearing before Judge Morgan was thereafter scheduled for June 7, 2024, by which time Appellant had submitted another accounting.[5] According to Appellant, Judge Morgan "undertook a much more inquisitive review of Appellant's accounting than previously exercised by Chancellors Butler and Maroney."

Following the June 7, 2024 hearing,[6] the trial court entered an order finding that Ward died in May 2024 and directing Appellant to file a final accounting. In reviewing the

---

[2] The trial court's decision to appoint Appellant as conservator was affirmed by this Court on August 6, 2020. *See In re Conservatorship of Winston*, No. W2019-01134-COA-R3-CV, 2020 WL 4556830 (Tenn. Ct. App. Aug. 6, 2020).

[3] Following Chancellor Butler's retirement, Chancellor Steven W. Maroney was appointed to fill his vacancy.

[4] This accounting covered January 2023 through June 2023.

[5] This accounting was filed in April 2024 and covered July through December 2023.

[6] No court reporter was present for this hearing or for any of the later hearings at issue in this case.

April 2024 accounting, the trial court found several actions taken by Appellant over the life of the conservatorship to have been without prior court authorization, including (1) placing herself as a co-owner, with the right of survivorship, over Ward's Regions Bank account; (2) preparing a quitclaim deed conveying an ownership interest in Ward's home to herself and having the deed signed by Ward; (3) refinancing the mortgage on the home and using the funds to pay Ward's credit card debts; (4) using Ward's funds to pay Appellant compensation as conservator and to pay Appellant's "own personal expenses"; and (5) assisting Ward in creating a trust. The trial court therefore ruled that it was unable to approve the accounting without a further hearing and review of documents. Appellant was directed to submit a final accounting and other documents to support her actions.

Appellant filed the requested documents on July 1, 2024. A second hearing was held on July 22, 2024. In its July 23, 2024 order, the trial court explained that it was addressing only the two most recent accountings, covering July through December 2023 and January through May 2024.[7] As an initial matter, the trial court noted that Tennessee law provides that "[n]o compensation to the fiduciary shall be paid without prior court approval." Tenn. Code Ann. § 34-1-112(c). After hearing Appellant's testimony, the trial court ruled that Appellant "breached her fiduciary relationship as to some expenditures because such were not expenditures for the benefit or protection of [Ward], or were compensation without prior court approval." The trial court listed each improper expenditure separately, totaling $14,028.84 from the 2023 accounting[8] and $8,000.00 from the 2024 accounting.[9]

The trial court also explained that Appellant breached her fiduciary duty in placing herself on Ward's bank account rather than establishing a conservatorship account, preparing a quitclaim deed transferring property from Ward to herself, and preparing the documents necessary to establish the living trust. The trial court further ruled that some "Payoffs and Payments" from the refinancing of the mortgage were for the benefit of Appellant and ordered her to repay $2,380.79 for those payments. The trial court accordingly approved the two accountings with the exception of the above expenditures and ordered Appellant to reimburse the conservatorship account in the amount of $24,409.63 and to prepare a final accounting.

The trial court held a separate hearing in order to approve the accounting that covered January 2023 to June 2023. In the August 13, 2024 order that followed, the trial court once again found that Appellant breached her fiduciary duty as to some expenditures because they were not for the benefit of Ward or were compensation to Appellant without prior court approval. Specifically, the trial court found that a total of $9,475.62 was

---

[7] The order stated that Judge Morgan had only recently been made aware of the January through June 2023 accounting originally directed to Chancellor Maroney and needed time to review the same.

[8] Some of the expenditures were to third-parties, such as for the lease of a storage unit, but many of the expenditures were Zelle transfers directly to Appellant in denominations of $500.00, $1,000.00, and $1,500.00.

[9] This amount reflected eight $1,000.00 Zelle transfers to Appellant.

unauthorized.[10] The trial court approved the accounting as to the remaining expenditures.

The trial court later amended its order to remove $69.98 in third-party charges, as Appellant demonstrated that those charges were refunded to the account. In that same order, the trial court noted that objections to Appellant's preliminary final accounting were filed by Ms. Lewin and Appellant's brother, Appellee Russell Winston (together with Ms. Lewin, "Appellees"), and set the matter for a hearing.

On November 14, 2024, the trial court, after hearing testimony, ruled that Appellant would be removed as conservator and that Appellee Attorney Sara Barnett would be appointed as substitute conservator. The trial court explained that Appellant's removal was justified by her failure to file a full final accounting, inappropriate transfer of conservatorship property, mismanagement of funds, and failure to comply with the trial court's orders, all of which caused harm to Ward's estate. Appellant was enjoined from transferring or otherwise disposing of any conservatorship assets. The trial court also reiterated that the quitclaim deed was void ab initio and of no legal force or effect. The trial court therefore ordered the Madison County Registrar's Office to mark the deed as "VOID BY COURT ORDER" and to record this order in the property's chain of title.[11] The trial court likewise declared any documents executed in connection with the living trust to be void. The trial court ordered that $20,000.00 held in escrow as the proceeds from a lawsuit owed to Ward be part of the conservatorship estate and be paid into the court.[12] The trial court finally noted that surety State Farm had indicated an intent to file a motion under Tennessee Code Annotated section 25-3-122 to recoup its possible payments under the bond, and ordered State Farm to file a written motion to that effect.

On December 10, 2024, State Farm filed a motion asking that Appellant indemnify State Farm "in the amount of any payment that State Farm is required to make under Conservator Bond No. 92-C2-Z037-04" up to the $25,000.00 value of the bond it had issued. The trial court granted the motion by order of February 10, 2025. Therein, the trial court found that Appellant was ordered to reimburse the conservatorship account in the following amounts: (1) $24,409.63 under the trial court's June 7, 2024 order; and (2) $9,475.62 under the trial court's August 14, 2024 order. Because Appellant had made no payments on these reimbursements, the trial court ordered Appellant to reimburse the conservatorship account in the total amount of $33,885.25 within thirty days. If Appellant failed to do so, State Farm was required to deposit "the penal sum of the Bond, $25,000, into an interest-bearing account maintained by the Clerk of Court[.]" Judgment was entered in favor of State Farm against Appellant for any amounts State Farm was required to pay.

A final accounting was filed by Substitute Conservator Barnett on March 3, 2025.

---

[10] These expenditures included more Zelle payments to Appellant and charges to three third-parties.
[11] The mortgages on the property remained valid and enforceable.
[12] The actual amount owed to Ward was $20,219.16, which was promptly deposited with the court.

The final accounting indicated that State Farm had paid its $25,000.00 obligation under the bond, leaving a balance of $8,885.25 still owed by Appellant under the trial court's judgment. The final accounting also identified over $5,000.00 in "questionable expenditures" from Ward's bank account but noted that Appellant deposited personal funds into the account in the amount of $13,479.43 and the funds were commingled with conservatorship assets.

The trial court entered an order on March 6, 2025, stating that Appellant "continued to use conservatorship funds for personal use after Ward's death." Substitute Conservator Barnett also reported that Ward's bank account showed checks signed by her after her death and that Ward's car title was recorded following Ward's death as having been transferred to Appellant. The trial court therefore directed Substitute Conservator Barnett to provide additional information and set the matter for a hearing following an audit by the court clerk. Substitute Conservator Barnett filed copies of the checks and the transfer of title, which occurred in July 2024 and was based on a September 2023 contract that stated that it was personally witnessed by a notary in California. Substitute Conservator Barnett also filed a motion for attorney's fees and expenses of $6,519.00.

The trial court issued a final order approving the conservatorship final accounting and authorizing final distribution of conservatorship assets on April 21, 2025. The trial court approved Substitute Conservator Barnett's request for attorney's fees, to be paid from the $45,219.16 held by the clerk of court. The trial court directed the remaining balance, $38,700.16, to be divided equally between Appellant, Ms. Lewin, and Mr. Winston as Ward's heirs at law. Appellant's net obligation to the estate—comprising the $8,885.25 still due under the prior judgment, the $5,200.27 in improper expenditures during the final accounting period, the $4,901.00 value of Ward's car in Appellant's possession, plus the $6.66 balance of Ward's bank account in Appellant's name, less the $13,479.43 of Appellant's commingled personal funds, for a total amount owing of $5,514.05—was to be similarly divided between the heirs.[13] Ultimately, Appellees each received $14,738.07 from the estate and Appellant received $9,224.02. The trial court did not address the real property, cemetery plots, or personal property owned by Ward at her death, directing the parties to initiate a separate legal proceeding if necessary. The trial court ruled that its order was a final appealable order, but that the funds would be held by the court clerk pending appeal.[14] This appeal followed.

## II. ISSUES PRESENTED

---

[13] Because Appellant effectively owned one-third of the judgment against herself, her ultimate award was reduced by only two-thirds of this amount, a total of $3,676.03.

[14] State Farm thereafter filed a motion to collect judgment against Appellant. Specifically, State Farm asked that it be issued a check for the amount that Appellant was due from the conservatorship estate, and all future amounts to be distributed up to $25,000.00. The clerk of the court responded that it could not distribute any funds due to the trial court's order directing the clerk to continue to hold the funds pending appeal.

Appellant raises two issues in this appeal, which are taken, with slight restatements, from her brief:

1. The trial court erred by ordering Appellant to repay more than $25,000.00 in expenses incurred for the benefit of her mother on the unfounded grounds that Appellant made such expenditures for her own personal benefit without obtaining prior court approval, even though two previous chancellors overseeing the case, including the one who appointed her as conservator, routinely approved all of Appellant's accounting for similar expenditures from 2019–2023, thereby improperly triggering the payment of a $25,000.00 bond by surety State Farm.

**2.** Even if the trial court were technically correct that Appellant was obligated to repay unapproved expenses incurred on behalf of her mother, thereby requiring Appellee surety State Farm to execute its $25,000.00 bond to cover any such obligation, Appellant is not liable to indemnify State Farm for all or part of its disbursement because Appellant acted entirely in good faith in her capacity as conservator and there was no indemnity provision in her bond agreement with State Farm.

### III. ANALYSIS

### A.

Appellant's first issue in this case involves whether the trial court erred in excluding over $25,000.00 in claimed expenses from Appellant's accountings on the basis that the expenses were either not for the benefit of Ward or were reimbursements to Appellant without prior approval. The thrust of Appellant's argument is that because Tennessee law provides many instances in which expenditures from a conservatorship account do not require prior approval and the prior trial judges in this case approved of Appellant's practice from 2019 to 2023 of seeking compensation following an expenditure, she should not have been penalized "merely because a new judge takes over the case at the end." A review of the relevant statutes is therefore helpful to our analysis.

A fiduciary is entitled to reimbursement for a variety of costs, including "any required medical examination, the guardian ad litem fee, bond premium, court costs, attorney fees, fees for income tax preparation and court accountings, investment management fees, taxes or governmental charges . . . and such other expenses as the court determines are necessary for the fiduciary." Tenn. Code Ann. § 34-1-113(a). Approval of payments under this section may be requested "[e]ither prior to or after payment" of the charge incurred, so long as the charges are "incurred by the fiduciary in good faith on behalf of the minor or person with a disability, and are intended to benefit or protect the minor or person with a disability or such person's property, whether or not an actual benefit or protection is ultimately in fact attained." Tenn. Code Ann. § 34-1-113(b). Other

expenses that do not fit within the above description may be approved by the court so long as they are reasonable and they benefitted or protected the ward or his or her property or their payment was in the ward's best interest. Tenn. Code Ann. § 34-1-113(c); *see also* Tenn. Code Ann. § 34-1-122 ("In considering expenditures of income or principal of the property of the minor or person with a disability, the court may authorize distributions to persons other than the minor or person with a disability if the court determines the expenditures are in the best interests of the minor or person with a disability. In making its decision, the court may consider whatever information the court deems relevant to its decision, keeping in mind its primary responsibility is for the care and maintenance of the minor or person with a disability and the person's property.").

Under Tennessee Code Annotated section 34-1-112, a fiduciary is also entitled to "reasonable compensation for services rendered." Tenn. Code Ann. § 34-1-112(a). However, the statute further provides that "[n]o compensation to the fiduciary shall be paid without prior court approval." Tenn. Code Ann. § 34-1-112(c).

The trial court has discretion to both require additional actions not required by the statute or to waive the requirements of the statute "if the court finds it is in the best interests of the minor or person with a disability to waive such requirements, particularly in those instances where strict compliance would be too costly or place an undue burden on the fiduciary or the minor or the person with a disability." Tenn. Code Ann. § 34-1-121(a).

Thus, there are two classes of expenses at issue in this case: (1) expenses for the benefit and protection of Ward, which may be approved after the fact; and (2) compensation to Appellant as conservator, which must have prior court approval. The trial court excluded both types of expenses in this case. Specifically, the trial court noted in each of the accountings that there were a number of direct payments to Appellant via Zelle, often for sums of $500.00, $1,000.00, or $1,500.00. The trial court clearly deemed these payments as compensation to Appellant without prior approval under section 34-1-112(c) and required that Appellant repay these amounts. With regard to other expenses that were paid to third-parties, the trial court, after hearing the testimony presented at each hearing, determined that the expenses were not for the benefit of Ward.

On appeal, Appellant argues that the Zelle payments reflect repayment for routine living expenses that were simply fronted by Appellant while she cared for her mother. She notes that the property management plan itself anticipated a shortfall each month and submits that she was required to forgo outside employment in order to care for her mother. She further asserted at oral argument that while she did use some of Ward's funds to pay expenses on her behalf, such as for a storage unit following her move, these expenses were necessary in order to allow her to care for Ward full-time. As we perceive it, she essentially argues that the trial court should have excused her failure to seek prior court approval for the direct payments to herself, as these payments and all other suspect expenditures were for the benefit of Ward and Appellant was operating under the status quo routinely

permitted by the earlier presiding judges.

The most significant problem with this argument, however, is that without the benefit of a transcript or statement of the evidence from any of the relevant hearings, we have no proof to overturn the trial court's findings that these expenses were not for the benefit or in the best interest of Ward.

Here, each time that the trial court excluded expenses, it expressly ruled that the expenditures were not for the benefit or protection of Ward. Although Appellant may take issue with that finding on appeal, Appellant has provided this Court with neither a transcript nor a statement of the evidence as required by our rules. *See* Tenn. R. App. P. 24(b) & (c).

In a non-jury bench trial, we are required to review the record de novo with a presumption of correctness as to the trial court's factual findings unless the preponderance of the evidence is otherwise. ***In re Conservatorship of Hudson***, 578 S.W.3d 896, 905–06 (Tenn. Ct. App. 2018) (citing Tenn. R. App. P. 13(d)). But "[w]hen no transcript or statement of the evidence is included in the record on appeal, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct." ***In re M.L.D.***, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005); *see also* ***Fayne v. Vincent***, 301 S.W.3d 162, 169–70 (Tenn. 2009) ("[W]hen an issue of sufficiency of the evidence is raised on appeal, we must presume, in the absence of a record of the proceedings, that the transcript or statement of the evidence, had it been included in the record, would have contained sufficient evidence to support the trial court's factual conclusions."); ***Short v. Alston***, No. W2022-00666-COA-R3-CV, 2023 WL 5294531, at *3 (Tenn. Ct. App. Aug. 17, 2023) ("It is well settled that in cases where no transcript or statement of the evidence is filed, the appellate court is required to presume that the record, had it been properly preserved, would have supported the action of the trial court."). The rationale for this rule is patent: we "cannot review the facts de novo without an appellate record containing the facts[.]" ***Sherrod v. Wix***, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). Thus, when an appellant's argument on appeal challenges the trial court's factual findings but fails to supply this Court with a transcript or statement of the evidence, we often hold that the appellant has effectively waived his or her appeal. *See* ***Chiozza v. Chiozza***, 315 S.W.3d 482, 492 (Tenn. Ct. App. 2009) ("The failure of the appellant to ensure that an adequate transcript or record on appeal is filed in the appellate court constitutes an effective waiver of the appellant's right to appeal.").

Although not raised as a specific issue on appeal,[15] Appellant nevertheless argues that she should be permitted to return to the trial court in order to prepare a statement of the evidence. Appellant suggests that her self-represented status prevented her from understanding the availability of a statement of the evidence or that one "needed to be filed

---

[15] Nor was this argument raised in the argument section of Appellant's brief, but in the statement of facts section.

in the trial court[.]"[16] It is true that "[t]he courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs." **Hessmer v. Hessmer**, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). However, it is well settled that, "[w]hile a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, . . . [p]ro se litigants must comply with the same substantive and procedural law to which represented parties must adhere." **Chiozza**, 315 S.W.3d at 487 (citing **Hodges v. Tenn. Att'y Gen.**, 43 S.W.3d 918, 920–21 (Tenn. Ct. App. 2000)). Respectfully, we cannot agree that Appellant's pro se status justifies the failure to provide a sufficient record.

"It is well-settled that the duty to prepare a record which 'conveys a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal' rests on the appellant." **State v. Bobadilla**, 181 S.W.3d 641, 643 (Tenn. 2005) (citing Tenn. R. App. P. 24(b)). Moreover, following the final judgment in this case, Appellant affirmatively represented to the trial court that she "decided to provide neither transcripts nor evidence in [her] statement," citing Rule 24. So then it appears that Appellant was aware of Rule 24's requirements but chose to proceed with her appeal without a statement of the evidence. Moreover, although this issue was raised in the body of Appellant's brief, she filed no motion in this Court at any point asking that we grant her additional time to file a statement of the evidence.[17] We do not correct errors that result from the complaining party's own choices. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Appellant also asserts in her brief that the trial court's factual findings were inadequate and conclusory, citing **In re Conservatorship of Hudson**, 578 S.W.3d 896 (Tenn. Ct. App. 2018). Rule 52.01 of the Tennessee Rules of Civil Procedure does require that trial courts make findings of fact and conclusions of law following bench trials. "There is no bright-line test by which to assess the sufficiency of factual findings, but the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the

---

[16] Appellant raises a similar contention that she was not educated in what expenditures were proper or improper while acting as conservatorship in this case. She points to new Tennessee law that requires that conservators be given clear instructions as to their fiduciary duties. *See generally* Tenn. Code Ann. § 34-1-109(b), eff. July 1, 2024 (requiring that the conservator promise to, inter alia, make decisions in the best interest of the ward and not "[s]pend the [ward's] money or use the [ward's] property for my benefit, or pay myself without court approval"). This language was not included in the cited statute at the time that Appellant was named conservator. Moreover, the record indicates that Appellant fought to be named conservator over her sibling's request that a public conservator be appointed. If Appellant was unsure of her ability to comply with Tennessee law, she could have acquiesced to her sibling's request. After Appellant's own request to be named conservator was granted, however, it was her duty to administer the conservatorship in compliance with all applicable laws.

[17] Appellant did file two motions seeking additional time to prepare her brief, both of which were granted. Neither mentioned the statement of the evidence issue.

reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (citation and quotation marks omitted). In *In re Conservatorship of Hudson*, the trial court entered an order approving a public guardian's request for compensation but "entered no specific findings . . . regarding the statutory factors provided in Tennessee Code Annotated § 34-1-112(a) other than a finding that the motion was 'proper.'" 578 S.W.3d at 914. The trial court also closed the conservatorship without addressing any of the objections filed by the opposing party. *Id.* at 915. We therefore vacated the trial court's judgment, as we were "unable to discern with any certainty the basis upon which the conservatorship court found the specific objections to be unavailing[.]" *Id.* As we explained, because the trial court failed to "memorialize[] its rationale," reviewing the trial court's order would require that we "speculate as to the conservatorship court's reasoning[.]" *Id.* at 917. This we declined to do.

It is true that trial court in this case did not recount in detail the testimony presented at each hearing. The trial court did, however, make detailed findings as to which expenditures were suspect and specifically found that these expenses were not for the benefit of Ward and, to the extent that they constituted reimbursement to Appellant personally, were not pre-authorized by the trial court. Thus, unlike in *In re Conservatorship of Hudson*, we are not "left to wonder on what basis" the trial court made its decision. *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting *In re Est. of Oakley*, No. M2014-003410-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015)).

Moreover, the trial court entered multiple orders in substantially the same format over the course of the current judge's tenure on this case. Appellant never objected to any of the earlier orders on the basis that the findings therein were not specific enough, nor did she ever request that the trial court make more specific findings. *See* Tenn. R. Civ. P. 52.01 (permitting a party to request additional findings). Under these circumstances, we conclude that the trial court's findings are sufficient to facilitate meaningful appellate review in this matter. And because Appellant failed to submit a transcript or statement of the evidence from which we could evaluate these findings, we are required to presume that the trial court's express finding that certain listed expenses were not for the benefit of Ward and/or were not authorized by the trial court in advance was supported by the evidence presented.[18]

---

[18] The fact that earlier trial court judges may have come to different conclusions is no matter. While the earlier trial judges may have approved expenditures of the type that Judge Morgan later found to be objectionable, nothing in the earlier judges' rulings authorized Appellant to pay expenses that were not for the benefit of Ward or to pay herself without prior court approval in perpetuity. So then, the earlier rulings did not foreclose the possibility that Appellant's expenditures would be subject to scrutiny in the future.

Moreover, Appellant concedes in her brief she "may not have technically obtained prior court approval for each expenditure" that she claimed in the subject accountings. Indeed, alleged repayments to Appellant, rather than to third-parties, often constitute the bulk of the expenses that were excluded by the

Appellant also contends that she should not have been subject to personal liability for the expenditures because she acted in good faith in administering the conservatorship on behalf of Ward. In particular, she contends that liability should only be imposed if there is a violation of fiduciary duty, evidence of fraud, self-dealing, gross negligence, or misappropriation. In our view, however, this case presents a classic case of self-dealing. Importantly, the trial court repeatedly found that Appellant violated her fiduciary duty and that she made expenditures for her own benefit, including thousands of dollars in Zelle payments to herself. In addition to the expenditures that the trial court found to be unauthorized, it must be remembered that the trial court was also required to invalidate a quitclaim deed granted in Appellant's favor. Appellant also gave herself survivorship rights over Ward's bank account rather than creating a proper conservatorship account, had title to Ward's car placed in her name, assisted in establishing a living trust without court approval, and continued to sign checks in Ward's name after her death. The trial court found that Appellant's actions caused harm to Ward's assets. This case therefore represents a clear pattern of self-dealing by Appellant. While the trial court may not have used the phrase "bad faith," it is clear from the trial court's orders that it found that Appellant failed to act in good faith while serving as conservator, ultimately leading to her removal. *See Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013) ("[W]hen construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated."). Thus, this case meets Appellant's own metric as to when personal liability may be imposed.

In sum, we conclusively presume that the trial court's factual findings were supported by the evidence. We therefore affirm the trial court's findings that Appellant repeatedly breached her fiduciary duty by engaging in actions that were not authorized by the property management plan, by using Ward's assets to pay expenses that were not for the use and benefit of Ward, and by making expenditures to herself without prior court authorization. Under these circumstances, the trial court did not err in ruling that Appellant was required to reimburse the conservatorship account for the unauthorized expenditures or for deducting unpaid amounts from Appellant's share of the conservatorship assets.[19]

**B.**

Appellant next asserts that the trial court erred in granting State Farm's motion for

---

trial court. Thus, Appellant is essentially arguing that the trial court erred in refusing to waive the requirements of the conservatorship statutes, as she assumes the earlier trial court judges must have. *See* Tenn. Code Ann. § 34-1-121(a) (permitting the court to waive the requirements of the statute in the best interest of the ward). But such a waiver still must be in the best interests of Ward, and without a transcript or statement of the evidence, Appellant can point to no evidence to demonstrate that any of the subject expenses meet that requirement. We decline to conclude that the trial court abused its discretion in failing to waive the express requirements of the conservatorship statutes under these circumstances.

[19] Appellant did not take issue with the trial court's calculations at any point in her appeal, so we do not address that aspect of the trial court's order.

indemnification under its surety bond. In this case, Appellant was ordered to obtain a surety bond under Tennessee Code Annotated section 34-1-105(a)(1), which provides that "Except as otherwise provided in subsection (b), bond shall be required of the fiduciary in an amount equal to the sum of the fair market value of all personal property and the amount of the anticipated income from all property, including the real property, for one (1) year." Appellant obtained a surety bond from State Farm, which was renewed annually as required by the statute. *See* Tenn. Code Ann. § 34-1-105(a)(3). Eventually, the trial court held that if Appellant failed to reimburse the conservatorship account for the amounts owed, State Farm was required to deposit $25,000.00 into an account with the clerk of the court and State Farm was granted a judgment in favor of Appellant for the amounts it paid. After Appellant failed to reimburse the court, State Farm paid $25,000.00 to the court clerk as required by the trial court's order.

On appeal, State Farm argues that the trial court was correct to grant a judgment against Appellant for the $25,000.00 that it paid pursuant to the surety bond under Tennessee Code Annotated section 25-3-122, which provides as follows:

> Sureties are entitled to judgment by motion against their principals:
> (1) Whenever judgment has been rendered against them as such sureties;
> (2) Whenever such judgment, or any part thereof, has been paid by the surety.

In this case, judgment was both rendered against State Farm by the trial court and the judgment was paid by State Farm as surety. There can be no question that State Farm was entitled to judgment against Appellant under the statute.

On appeal, however, Appellant argues that because there is no caselaw applying section 25-3-122 to conservatorships specifically, we should conclude that this statute is inapplicable in this situation. Respectfully, we disagree. In construing a statute, "we focus initially on the statute's words, giving these words their natural and ordinary meaning in light of their statutory context." ***Shore v. Maple Lane Farms, LLC***, 411 S.W.3d 405, 420 (Tenn. 2013) (quoting ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 526 (Tenn. 2010)). In this case, the Tennessee General Assembly utilized broad language to describe a surety's ability to recover against a principal. Indeed, use of the word "whenever" to describe the availability of the remedy therein indicates that the Tennessee General Assembly had no intent to exclude bonds entered in conservatorships from its application. *Cf.* Whenever, *Webster's New World College Dictionary* (5th ed.) (defining "whenever" as, inter alia, "on whatever occasion").

Appellant also argues that she was under no obligation to indemnify State Farm in the absence of an express indemnity agreement. However, Tennessee courts have held that "[t]he law implies a contract between debtors and their sureties that if the surety is compelled to pay part or all of the debtor's debt to a creditor, the surety is entitled to

reimbursement from the debtor." **Hardy v. Miller**, No. M1998-00940-COA-R3-CV, 2001 WL 1565549, at *7 (Tenn. Ct. App. Dec. 10, 2001) (citing *Restatement (Third) of Suretyship & Guaranty* § 22 (1996) ("When the principal obligor is charged with notice of the secondary obligation, the duty to reimburse, like the principal obligor's duty to perform, arises from implied contract. Just as the principal obligor impliedly agrees that it will perform the underlying obligation so that the secondary obligor will not have to perform, the principal obligor also agrees that it will reimburse the secondary obligor to the extent that the secondary obligor does perform, thereby fulfilling all or part of the underlying obligation.")); *see also* **Williams v. Greer's Adm'rs**, 5 Tenn. 235, 240 (1817) ("[T]he contract is implied by law between them that the surety shall be absolutely indemnified . . . ."). As a treatise on this subject explains,

> In the absence of an express agreement governing the relationship of principal and surety, there is an implied contract that the principal will indemnify or reimburse the surety for any payment the latter may make to the creditor or any loss the surety may sustain in compliance with the contract of suretyship, and save the surety harmless. That is, there is an implied promise by the principal to indemnify the surety, notwithstanding the absence of an express written agreement between them. When a surety signs a bond, the law raises an implied promise by the principal to reimburse the surety for any loss which he or she may sustain.

72 C.J.S. *Principal and Surety* § 249 (footnotes omitted). Thus, the absence of an express indemnification contract is not fatal to State Farm's request for indemnification as an implied contract for reimbursement was created that Appellant would reimburse State Farm for any loss it sustained under the bond.

Here, there is no dispute that Appellant was ordered to pay in excess of $25,000.00 to reimburse the conservatorship account or that State Farm met its obligation to pay $25,000.00 under the surety bond. Based on the implied contract created in this scenario, the trial court did not err in ruling that State Farm was entitled to indemnification of the amounts it paid as Appellant's surety.

### IV. CONCLUSION

The judgment of the Madison County General Sessions Court, Probate Section is affirmed, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Alison Winston, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 13 -